[Civ. No. 9530.   First Appellate District, Division One.—July 30, 1935.]

STATE FINANCE COMPANY (a Corporation), Appellant, v. HERSHEL CALIFORNIA FRUIT PRODUCTS COMPANY (a Corporation), Defendant and Respondent; ROCCO ALBANESE, Intervener and Respondent; H. L. RANDAZZO, Second Intervener and Respondent.

Goldman & Altman for Appellant.

O. H. Speciale for Defendant and Respondent.

R. V. Bressani and M. Henry Robidoux for Intervener and Respondent.

Victor A. Chargin and Gerald S. Chargin for Second Intervener and Respondent.

WARD, J., *pro tem.*—This action was commenced by plaintiff State Finance Company against defendant Hershel Cali-

fornia Fruit Products Company for the recovery of $1659.86. In January, 1930, one Joe Tedesco entered into a written contract, for a period of three years, with defendant to haul tomatoes from the fields of the growers to the company's plant. In December, 1931, Tedesco executed an assignment in writing to the plaintiff of moneys which would become due to him from defendant for the 1932 hauling season. Two complaints in intervention were filed; one by Rocco Albanese for $1336.44, and a second to H. L. Randazzo for $400. The defendant admitted the amount due Tedesco upon the hauling contract but asked leave to deposit the sum with the court because of conflicting claims. Two dollars less than the admitted amount was deposited. The shortage was evidently to cover defendant's filing fee. The order directing the deposit provided that if it should be determined the claim against defendant should include interest and costs, the judgment would award to the party entitled thereto, in addition to the sum deposited, such costs and interest as may have accrued prior to the date of the order. Judgment was rendered in favor of defendant for its costs; in favor of intervener Albanese in the sum of $1252.85; in favor of intervener Randazzo in the sum of $400, and in favor of plaintiff in the sum of $5.01, without interest; said judgment further directed that plaintiff and interveners should pay their own respective costs.

Tedesco was originally indebted to the Macaulay Finance Company, with an office at San Jose. The indebtedness was secured by a mortgage on Tedesco's trucks. The Macaulay Finance Company refinanced this indebtedness with the State Finance Company. In December, 1931, Tedesco was in default in a sum exceeding $10,000. With the expectation that Tedesco would be able to pay approximately half of the indebtedness during the 1932 season, it was agreed that Tedesco should execute an assignment, reserving unto himself the right to draw upon the defendant with the approval of plaintiff. The assignment was not absolute but limited to paying plaintiff with the right to divert part of the proceeds to bills and labor. Plaintiff eventually obtained from the contract $7,325, and retained its mortgage on the trucks. Mr. Thad W. Macaulay of the Macaulay Finance Company prepared the assignment from Tedesco to plaintiff. The earnings of Tedesco were to be paid direct to the State Finance Company

at San Jose. Macaulay represented plaintiff in other matters at San Jose. Before the hauling season commenced, at the express request of the president of the State Finance Company, Macaulay altered the terms of the assignment by ordering the Hershel company to make all checks payable to plaintiff and Joe Tedesco. Tedesco also owed Rocco Albanese approximately $5,000, evidenced by a promissory note secured by a chattel mortgage on three trucks and trailers, two of which were designated as numbers 1 and 6. There was a further indebtedness to the Seaside Oil Company, of $400 for fuel, assigned to H. L. Randazzo. In February, 1932, the contract was renewed direct to plaintiff. When Tedesco desired to hire trucks to assist in the work, Macaulay gave such permission, and plaintiff approved by paying the bills. The license plates for the trucks and trailers were purchased by appellant through Macaulay. Tedesco drew on the Hershel account to pay for labor and other expenses. These bills were approved by Macaulay. The record shows that payments were made to Macaulay and that all bills were approved by Macaulay.

Respondent Albanese contends that trucks 1 and 6 were excluded from the December, 1931, assignment, and that if there is any doubt on this point, Macaulay, subsequently representing the plaintiff, released all moneys earned for hauling with trucks 1 and 6 and the trailers. The court found that the original contract had been modified by an oral agreement made by the duly authorized general agent of plaintiff.

Unless only one conclusion may be drawn, the right of an agent to modify an agreement is a question to be determined by the trier of the facts. (*Curran* v. *Earle C. Anthony, Inc.*, 77 Cal. App. 462, 469 [247 Pac. 236].) The evidence on this subject is conflicting, but the greater weight seems to be against plaintiff. That an agent is hired to acquire interests and not to give them up is a presumption that may be overcome if the principal had knowledge of the change in a contract and did not within a reasonable time countermand and cancel the modification. The rule is well stated in 31 Cyc. 1387: "Presumptively an agent is employed to make contracts, not to rescind or modify them, to acquire interests, not to give them up, and no power to cancel or vary an agreement is to be inferred from a general power to make it, nor has the agent any implied power to waive or give up

rights or interests for his principal . . . unless the principal knew or approved of such modification by the agent.'' This rule has been approved in *Thomas* v. *Anthony*, 30 Cal. App. 217, 222 [157 Pac. 823], and in *Harbor Construction Co.* v. *Walters*, 101 Cal. App. 470, 475 [281 Pac. 1062]. ▮ The authority of the agent to modify a provision of a contract may be inferred from the evidence that he was empowered to do certain things, as in this case to change the parties to whom the money was to be paid. There is evidence in the record from which an inference may be drawn that the principal knew of the oral modification. There is no evidence to show that the modification was repudiated. Actual authority has been conferred upon the agent by the principal, and ostensibly this authority had been communicated to the interested third parties. (Civ. Code, secs. 2316 and 2317.) '' . . . the extent of an agent's authority, and the ratification of an unauthorized act, may be proved by circumstantial evidence, as from the fact that the agent signed contracts, checks and generally managed the business of his principal. . . . The existence of an agency, like the extent of an agent's authority, is a question of fact.'' (1 Cal. Jur., p. 696.)

The modification was for the benefit of plaintiff. Some question had arisen as to whether or not trucks 1 and 6 were included in the original contract. The work was in progress. It was important to determine immediately whether the two trucks and trailers should operate. Intervener Albanese held a chattel mortgage on these two trucks. Legal obstacles might have delayed the work. Macaulay authorized Tedesco to pay the proceeds for the use of the trucks to Albanese. The use of five trailers could be continued for the benefit of appellant. The care, upkeep and part of the expense was thrust upon Albanese. The executed oral agreement altering the provisions of the written contract consisted in the doing of something by Tedesco not required in the original contract; namely, that plaintiff should be relieved of the expense of purchasing license plates, etc. This burden was placed upon Tedesco, and the fact that it was Albanese's money that paid for these expenses does not alter the situation. Tedesco would have been responsible if Albanese had not paid such expenses, and at that time plaintiff was paying Tedesco's hauling bills. If Tedesco did not continue to perform, de-

fendant would have no recourse but to terminate the hauling contract, much to the disadvantage of plaintiff.

The oral agreement modifying the written contract was fully executed. At the termination of the hauling, the object of the agreement had been fully attained. In *Klein Norton Co.* v. *Cohen*, 107 Cal. App. 325, 330 [290 Pac. 613], the court said: "It is well settled by an abundance of authority in this state that a written agreement may be modified by an oral agreement only when the oral agreement has been executed." The fact that Tedesco did not pay to Albanese the sum then due was a matter over which he had no control. The modification was not a change in the Tedesco-Hershal contract but in the Tedesco-State Finance Company assignment. The failure of the defendant, not an interested party to the modification assignment except by way of receiving directions to whom to pay, cannot result in the classification of this agreement as an executory contract. Assuming that the contract had not been fully executed, plaintiff could not take advantage of a nonperformance which it had prevented by refusing to consent to the payment by defendant to Albanese for the work performed. The defendant was faced with conflicting claims, and plaintiff's contention that Albanese did not receive his money and therefore the oral contract was ineffectual to modify the written assignment is not well taken. (Civ. Code, secs. 1661 and 1698.)

Appellant contends that it was incumbent upon Albanese to prove not only that $1252.85 was earned by Tedesco with trucks 1 and 6, but also that the sum was unpaid and still owing by defendant at the commencement of the action. "The burden of proving a particular application of a payment by either the debtor or creditor is on the party claiming that such application was made." (30 Cyc. 1267; *Madera Sugar Pine Co.* v. *Adams*, 68 Cal. App. 111, 115 [228 Pac. 544].) The Albanese trucks were actually operated and the amount designated in the judgment had been earned. On December 15, 1932, there was more than the amount of the claim of Albanese in the possession of defendant. If Albanese had been paid the sum of $1252.85 when his hauling was complete in October, 1932, then there would not have been disbursed on account of plaintiff's claim and for labor, etc., the sum of $7,325. Perhaps plaintiff received part of Albanese's money as a result of the commingling of funds, but

there was sufficient evidence to support the finding that Albanese was the holder of a claim against Tedesco for money due him from defendant for hauling work performed by Tedesco with trucks 1 and 6.

■ The court found that intervener Randazzo, the assignee of the Seaside Oil Company, had a valid claim of $400, superior to plaintiff's claim, against the earnings of Tedesco held by the defendant. As noted before, the court found that Macaulay was the general agent of plaintiff, with general authority to act. This particular claim of $400 was for fuel delivered by intervener's assignor previous to the last hauling season. Tedesco signed an order directing Macaulay to pay to the Seaside Oil Company $400 in weekly installments at minimum payments of $40. This order was dated April 28, 1932, Macaulay accepted the order and indorsed over his signature: "payable every two weeks with delinquency of one week allowed". It may be claimed that the limitation in the written assignment was to pay current bills for labor, fuel, etc., but Macaulay, who directed and approved on behalf of plaintiff all financial matters in these transactions, was evidently faced with the possibility of litigation · either on the agreement or on the mortgage which might have hampered plaintiff in recovery. Macaulay evidently acted wisely and his good faith in this particular transaction does not seem to be questioned. The order was directed to the Macaulay Finance Company, but Macaulay, through the Macaulay Finance Company, was the agent of plaintiff, and had the right to modify the assignment for the benefit of plaintiff.

Subsequently respondent Randazzo brought suit upon two claims in the justice's court. Thereafter plaintiff paid one of these claims amounting to $259.15 and received a release from all claims described in the complaint. The release clearly was intended to apply to the $259.15 claim based upon fuel supplied by the Seaside Oil Company during the 1932 hauling season, and not to the previous claim of $400.

■ Appellant contends that, having obtained a judgment of $5.01, it should recover interest and costs. The order directing the deposit provided that if it was determined the claim against defendant should include interest and costs, the judgment should award, etc. No objection was made to the form or substance of this order. Under the provisions of sections 1022 and 1025 of the Code of Civil Procedure, in

actions at law involving the direct payment of money, the prevailing party is entitled to recover costs unless the amount of the judgment is such as could have been rendered in an inferior court. In equity proceedings the question of costs is discretionary with the trial court. In authorizing the deposit of the money the court reserved the right to dispose of the question of interest and costs. The defendant was willing to give the money to the person or persons legally entitled thereto, but efforts at settlement were in progress and the actual deposit was therefore delayed. If deposited with the court the day the money was due, no interest would have been paid. It would be quite an injustice under all the circumstances to force the defendant to pay interest. The record does not disclose that the prevailing interveners Albanese and Randazzo made any claim for interest.

█ Upon the motion for a new trial appellant filed affidavits, including one from Macaulay, that the written assignment had not been orally modified or qualified. Macaulay's place of business was located at the county seat and his presence at the trial could have been obtained. The record does not show that a request for a continuance for the purpose of interviewing Macaulay was presented. With these facts before the court, there was no error in denying the motion for a new trial.

Judgment affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 26, 1935.