[Civ. No. 6780.   Third Dist.   Aug. 31, 1943.]

GEORGE BARE, Respondent, v. RICHMAN & SAMUELS, INC. (a Corporation), Appellant.

Kellas & Lamberson, Frank C. Lerrigo and Sanford Solarz for Appellant.

Edward T. Taylor for Respondent.

THOMPSON, J.—This case is determined on a rehearing. It appears that the defendant, Richman & Samuels, Inc., a produce marketing corporation of New York, has appealed from a judgment for $2,224.10 and interest, which was rendered against it in a suit in assumpsit for the unpaid portion of the proceeds from sales of fifteen carloads of grapes, pursuant to the terms of an agreement consigning the grapes to the corporation for sale. The plaintiff orally directed the corporation to sell the grapes for market value f.o.b. Turlock, which was shown to be $27.50 per ton. A portion of the grapes was sold at auction, contrary to instructions, for much less than that price. Judgment was rendered on the basis of $27.50 per ton, less stipulated commissions and costs of marketing. From that judgment the corporation has appealed.

The defendant, Richman & Samuels, Inc., is a marketing corporation having its home office in New York City. It operated a fruit packing shed at Turlock, California, which was in charge of its local managing agent, Frank C. Belier. The plaintiff owned and operated a vineyard in Stanislaus County. July 3, 1935, Frank C. Belier, as agent for said marketing corporation, executed on behalf of the distributor a written contract with the plaintiff, by the terms of which the plaintiff "appoints the distributor his agent with exclu-

sive right to market fifteen cars of Alicante Buschet grapes . . . to be delivered to the distributor during the season of 1935.'' The contract is silent with respect to the price for which the grapes were to be sold. It provided that the grapes were to be delivered at a shipping point ''to be designated by the distributor''; that the grower would pay the distributor ''a reasonable packing and loading charge''; together with commissions for the sale of said grapes in the sum of ''seven per cent of the gross sales on all auction and delivered sales and ten per cent on all f.o.b. sales.'' The contract also made the distributor ''sole judge of the quality of the fruit furnished,'' and provided that ''The distributor agrees to use his best efforts to sell said grapes at the best possible price.''

Incident to the foregoing contract, the plaintiff also executed a crop mortgage on the grapes produced on his Stanislaus County farm to secure advances which were paid to him by the distributor. The sum of $1,500 was advanced on that mortgage.

The plaintiff orally instructed the agent, Belier, to sell all of the grapes for market value f.o.b. Turlock, and not otherwise. The agent notified the corporation of that fact. The corporation acknowledged receipt of that notice. All grapes were delivered to the defendants at the packing house in Turlock with that understanding. There is substantial evidence that the market value of the grapes at Turlock was $27.50 per ton. Six carloads of grapes were delivered between the dates of October 8 and 14, 1935, and sold for $27.50 per ton. Nine other carloads were delivered from October 15 to 17, 1935. Some of them were sold, contrary to said instructions, for less than $27.50 per ton. Two carloads were shipped to Eastern markets and sold at auction for comparatively small amounts.

This suit in assumpsit was brought against both the corporation and its agent for the unpaid portion of the market value of the grapes at the rate of $27.50 per ton, aggregating the sum of $2,224.10. The complaint contains a second count which is based on an alleged conversion of a portion of the grapes and the proceeds thereof. The action was dismissed as to the defendant, Belier. Defendants' motion to require the plaintiff to elect whether he would stand upon his cause of action in assumpsit or for conversion of the grapes was denied.

The cause was tried by the court sitting without a jury. Findings were adopted favorable to the plaintiff in every respect. The court specifically found that the written consignment contract was duly executed authorizing the corporation to sell said grapes as a factor or agent of plaintiff for market value f.o.b. Turlock, "and not otherwise"; that the market value of grapes f.o.b. Turlock, at the times of all deliveries, was $27.50 per ton; that a specified portion of the grapes was sold contrary to instructions for less than said price, and that the plaintiff is entitled to judgment for the unpaid portion of the value of said grapes in the aggregate sum of $2,224.10, together with interest from August 26, 1936. Judgment was accordingly rendered against the corporation for that amount. From that judgment this appeal was perfected.

The appellant contends that the court erred in refusing to compel the plaintiff to elect between his cause of action in assumpsit, and his alleged cause based on conversion of the grapes; that the corporation's local agent had no authority to modify the written agreement or to accept the grapes for sale at market value f.o.b. Turlock; that the findings and judgment to the effect that the market value of the grapes f.o.b. Turlock was not shown to be $27.50 per ton at the times of deliveries are not supported; that interest on the amount found to be due plaintiff was wrongfully allowed, and that the factor is not responsible to his principal for loss sustained by a necessary auction sale when the purchaser refused to accept delivery of the shipped grapes.

We are of the opinion the appellant was not prejudiced by the refusal of the court to require the plaintiff to elect whether he would rely upon his first cause of action in assumpsit, or upon the second count for alleged conversion of the grapes, in spite of the fact that the first cause is founded on contract and the second upon tort. The appellant relies upon the case of *Bank of America N. T. & S. Assn.* v. *Hill,* 9 Cal.2d 495 [71 P.2d 258], in support of that contention. The court properly reserved its ruling upon that motion until the introduction of evidence was completed. Inadvertently that motion was not finally determined. The court did not find upon the second count that the grapes were converted. The findings which were adopted on that cause clearly assumed that the allegations merely amounted to another method of stating an action for assumpsit. Since the court evidently assumed that both counts were founded on assumpsit and depended on the

same set of facts, the omission to pass upon defendants' motion for an election was harmless. Only one judgment was rendered upon the entire action for the market value of the unpaid portion of the grapes, together with interest. It has been held that, under such circumstances, the defendants are not prejudiced by a failure to require the plaintiff to elect his remedy as between two separate counts upon different statements of facts. (*Bank of America N. T. & S. Assn.* v. *Hill, supra; Glantz* v. *Freedman,* 100 Cal.App. 611 [280 P. 704].)

We are of the opinion the written agreement which is involved in this case was not modified or changed by the plaintiff by the mere direction to sell the grapes for market value f.o.b. Turlock, for the reason that the contract was silent with respect to the price for which they were to be sold. There is ample evidence that the plaintiff specifically directed the agent, Belier, to notify the factor corporation to sell the grapes for market value f.o.b. Turlock, or not at all, and that the corporation received those instructions. October 10, 1935, two days after the first load of grapes was delivered to Belier at Turlock, he received a telegram from the New York corporation, saying:

"We have good market & you can tell growers can sell cars US-1 Alicante Carignanes 27.50 net perhaps more."

October 15 Belier received another message from his principal, reading:

"We sold AOOAF [4 cars] Bare Alicante ACEQA [27.50] net have AOOAB [5 cars] open [unsold] will work hard trying to sell them today you explain this to Bare tell him not to worry that will work hard sell his grapes f.o.b. Quote $27.50 local."

Clearly the corporation knew the plaintiff had directed the selling of the grapes for market value f.o.b. Turlock at $27.50 per ton. It is conceded some of the grapes were sold for less than that sum. Such sales were in absolute disregard of the instructions received from the plaintiff. There is no dispute regarding the quantity or weight of the grapes received by the distributor.

The relationship of principal and factor between the parties to this appeal is not disputed. That relationship clearly existed. (*Rhee* v. *L. K. Small Co.,* 83 Cal.App. 339 [256 P. 839].) In the absence of a specific agreement to the

contrary, it is the duty of a factor to obey the directions of his principal to sell fruit for a price not less than a specified sum per ton, even though advances have been made on the crop. (Sec. 2027, Civ. Code; *Rhee* v. *L. K. Small Co., supra; Bones* v. *Fusco,* 21 Cal.App.2d 476 [69 P.2d 911]; *Cooper* v. *American Fruit Growers, Inc.,* 137 Cal.App. 494 [30 P.2d 558].) The foregoing authorities hold that a factor is liable for damages for failure on his part to obey the instructions of his principal with respect to the sale of produce. In those cases the factors failed to sell the produce to proposed purchasers when they were directed by the principals to do so. In the present case the factor deliberately sold a portion of the grapes for less than market value, which was shown to be $27.50 per ton, contrary to the specific directions of the plaintiff to sell them for market value f.o.b. Turlock or not at all. In the Rhee case, the language of the contract was strikingly similar to the agreement in the present case with respect to the factor's promise to "use his best efforts" to sell the products for "the best possible returns." In this case the factor agreed to "use his best efforts to sell said grapes at the best possible price."

Section 2027 of the Civil Code provides that:

"A factor must obey the instructions of his principal to the same extent as any other employee, notwithstanding any advances he may have made to his principal upon the property consigned to him, except that if the principal *forbids him to sell at the market price,* he may, nevertheless, sell for his reimbursement, after giving to his principal reasonable notice of his intention to do so, and of the time and place of sale, and proceeding in all respects as a pledgee."

We conclude that the distributing corporation, as a factor, was liable for the loss sustained by the plaintiff for failure to obey his instructions to sell the grapes for market value f.o.b. Turlock.

In view of our conclusion that this case does not involve the modification or change of a written agreement, it becomes unnecessary for us to determine whether there was an acceptance by the corporation of the instructions given by the plaintiff to its agent. Those instructions did not amount to a change of the terms of the contract. It is true that a mere agent is not ordinarily authorized to modify or rescind the contract of his principal. (*State Finance Co.* v. *Hershel California Fruit Products Co.,* 8 Cal.App.2d 524 [47 P.2d 821]; *Thomas* v. *Anthony,* 30 Cal.App. 217 [157 P. 823]; 6 Cal.Jur.

374, sec. 225.) It is also true that a written contract may be modified or even replaced by a subsequent, executed oral agreement between the parties, or by such agreement with an agent of a party when it is accepted or ratified by the principal. (Sec. 1698, Civ. Code; sec. 2307, Civ. Code; *State Finance Co.* v. *Hershel California Fruit Products Co., supra; Curtiss* v. *Starr & Co.*, 85 Cal. 376 [24 P. 806]; 6 Cal.Jur. 375, sec. 226; 17 C.J.S. 866, sec. 377b; 2 Williston on Contracts, rev. ed., 1702, sec. 591.) There may be adequate evidence in this case to show that the New York distributing corporation ratified the directions of the plaintiff to the agent Belier with respect to the minimum price for which the grapes were to be sold, but since we assume that was not a change of the terms of the contract, it is not necessary to determine that question of fact.

We are of the opinion the court properly allowed the plaintiff interest, under the provisions of section 3287 of the Civil Code, on the amount found to be due to him for the unpaid portion of the purchase price of the grapes, from August 26, 1936. That section reads:

"Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor, from paying the debt."

The interest provided for in the preceding section is in the nature of damages to compensate for the detriment caused by the delay in paying a liquidated sum of money at the time when it is due. This, in effect, is an action in assumpsit for damages for breach of an agreement to pay the market value of grapes f.o.b. Turlock. That form of action may be based on either an express or implied contract when it appears that the terms of the agreement have been fully performed with the exception of paying the stipulated sum thereunder. (7 C.J.S. 116, sec. 9bb.) Interest may be allowed upon a liquidated amount which one is entitled to recover, or when that sum may be rendered certain by mere calculation, and the right to recover is vested on a particular day. The mere fact that proof is required to determine *the market value* of property on a designated date, will not prevent the allowance of interest under section 3287 of the Civil Code. (*Farnham* v. *California Safe Deposit & Trust Co.*, 8 Cal.App. 266, 273 [96

P. 788]; *Brazil* v. *Azevedo,* 32 Cal.App. 364, 367 [162 P. 1049]; 8 Cal.Jur. 791, sec. 49; 15 Am.Jur. 583, sec. 166.) In the text last cited it is said in that regard:

"The more liberal view now prevails that interest will be allowed as damages where the demand, although unliquidated, is of such a nature that the amount is capable of ascertainment by mere computation, or can be established with reasonable certainty, *or determined by reference to well-established market values.*"

In the text found in 8 Cal.Jur., page 791, section 49, it is said:

"The fact that proof of the market value of goods is required to establish the amount of a claim does not render it incapable of being made certain by calculation, so as to prevent the allowance of interest under section 3287 of the Civil Code."

Since the contract, as alleged and determined by the court, provided for payment of the grapes at market value f.o.b. Turlock, which was ascertained to be $27.50 per ton, the conditions upon which interest may be allowed under section 3287 of the Civil Code have been fulfilled. The amount is not uncertain, according to the preceding authorities, because market value at Turlock was agreed upon, and that was definitely determined from the evidence adduced. Nor was the "particular day" on which the plaintiff was entitled to recover uncertain, for, pursuant to the positive instructions, the corporation was bound to sell the grapes for market value f.o.b. Turlock on the respective dates when they were delivered and accepted for shipment. The specific date of delivery of each and every carload of grapes was alleged and proved.

█ The crop mortgage which is attached to the complaint authorizes the distributor to sell the grapes at auction. Two carloads were so sold to prevent loss from deterioration after they had been shipped east and acceptance had been refused by a purchaser. The plaintiff was credited on carload number 25470 the net sum of $96.50, and upon carload number 28720 the net sum of $97.10. The average net sum received for the carloads which were sold for $27.50 per ton f.o.b. Turlock was $372 per carload. We have held that crop mortgage should be construed together with the written marketing contract. It authorized the corporation to sell those two carloads at auction. It is therefore entitled to credit for the difference between the f.o.b. Turlock market value of $27.50 per ton,

which was included in the judgment for $2,224.10, and the previously mentioned net returns for said two carloads sold at auction. That difference to which the corporation is entitled to credit is the aggregate sum of $550.40. Subtracting that sum from the amount of the judgment which was rendered leaves a balance of $1,673.10. The judgment is therefore modified to allow the plaintiff and cross-defendant judgment against the defendant and cross-complainant the sum of $1,673.10, together with interest thereon from August 26, 1936, at the rate of seven per cent per annum.

As so modified the judgment is affirmed. The respondent may recover his costs on appeal.

Peek, J., and Adams, P. J., concurred.

A petition for a rehearing was denied September 29, 1943, and the opinion and judgment were modified to read as above. Appellant's petition for a hearing by the Supreme Court was denied October 28, 1943. Traynor, J., voted for a hearing.