[Civ. No. 12714. First Dist., Div. One. Mar. 2, 1945.]

PHIL C. KATZ, as Public Administrator, etc., Respondent, v. DOROTHY GRAHAM ENOS, as Executrix, etc. et al., Appellants.

Bohnett, Hill & Cottrell, L. D. Bohnett and John B. Bohnett for Appellants.

Charles R. Collins, Henry F. Boyen, Frank J. Fontes and Richard V. Bressani for Respondent.

KNIGHT, J.—Robert M. Nelson brought this action against the representatives of the estate of his deceased sister, Elizabeth A. Nelson, to recover damages for the alleged wrongful conversion by her of 42 acres of land on Ryers Island in Solano County. The action was based on allegations to the effect that Nelson reposed great trust and confidence in his sister, and that while he was confined in a hospital suffering from a severe illness she procured and induced him to sign a document, the exact nature of which he did not then know; that subsequent to her death he discovered that the document was a deed conveying the property in question to her and that at some time prior to her death she had sold the property and appropriated the proceeds to her own use. Prior to trial Nelson died, and the administrator of his estate was substituted as party plaintiff. The cause came on for trial before the court without a jury. It found generally in plaintiff's favor, and entered judgment against the defendants for $5,000, the value of the land at the time it was sold, plus interest from the date of sale. The defendants appeal, one of the several grounds urged being that the evidence is insufficient to support the findings. The contentions made by defendants in this behalf are without merit.

Construing the evidence and resolving all conflicts therein in favor of the trial court's findings, the essential facts may be stated as follows: In May, 1936, Nelson, then being 65 years of age and unmarried, became ill, and went to the Stan-

ford Hospital in San Francisco for care and treatment. He was found to be suffering from a decompensated heart and an enlarged prostate gland, resulting in a damming up of the urine. He was treated for the heart ailment for several weeks, and some treatment was given to relieve the back pressure of the urine, but it was decided that an operation was necessary to remove the prostate gland, and arrangements were made to perform the operation on May 28, 1936. He did not have sufficient funds to pay his expenses, and sent for his sister Elizabeth, who lived in Los Gatos. She visited him on May 27, 1936, and he appealed to her for financial aid. She stated that she did not have money available, but consented to stay in San Francisco for a time to help her brother raise some money. At this time Nelson had a safe deposit box and some money in a savings account in the bank, but a power of attorney was necessary in order to give his sister access thereto. To this end she asked the doctor for the name of a notary public, and he referred her to William E. Schord. She telephoned Schord, asking him to come to the hospital, and upon his arrival she related the circumstances and requested him to prepare a power of attorney. He informed her that it would have to be drawn by an attorney. He suggested the name of attorney Carol Jacoby, and Miss Nelson asked Schord to get in touch with the attorney and have the power of attorney prepared. All of this took place on May 27, 1936, and late that afternoon Jacoby and Schord arrived at the hospital with the power of attorney. Miss Nelson explained to Jacoby that the purpose for which she wanted the power of attorney was that her brother was about to undergo an operation and that she wanted to place herself in a position to borrow some money, if necessary, to pay the expenses. Thereupon Nelson was requested to sign the power of attorney, which he did. Immediately following the execution of the power of attorney Jacoby had another conversation with Miss Nelson in the hall of the hospital, and at that time he advised her that if it was her desire to borrow money on property belonging to her brother that it would expedite matters if she had a deed—that she would be in a better position to obtain a loan than if she merely had a power of attorney; whereupon she instructed him to prepare the deed, and she called at his office the next morning, May 28th, to give him the description of the property. Jacoby prepared the deed—

a gift deed—and delivered it to Schord that same day. On the morning of that day the operation was performed on Nelson, and the next day, May 29th, Miss Nelson and Schord called at the hospital and Nelson executed the deed in their presence. Before Nelson signed the deed Schord informed Nelson that it was a deed of gift to his sister, and Miss Nelson told him that it would expedite the getting of the money, whereupon Nelson nodded his head and signed the deed. The deed was then given to Miss Nelson and she caused it to be recorded. Nelson recovered from the operation, and upon his discharge from the hospital went to Los Gatos where he resided with his sister until her death in September, 1938. She furnished him his food, clothing, tobacco and spending money. She also paid his doctor and dental bills, and alimony due from Nelson to his divorced wife in the sum of $600; and she paid the taxes and assessments upon the land in question. Some time before May, 1936, Nelson had entered into a written lease of said property for a rental of $50 a month, which expired November 1, 1938. He continued to receive the rentals provided for in the lease, but during his sister's lifetime he immediately endorsed the checks to his sister and they were deposited in her bank account.

So far as the record shows Miss Nelson did not borrow any money on the property, but on February 15, 1938, she sold the property to Rio Farms, Inc., for $5,000, and received in payment 40 shares of Pacific Telephone and Telegraph stock valued at $4,610.95, and $389.05 in cash. The stock was taken in her name, and the cash was deposited by her in her bank account. Upon her death her will was offered for probate. By its terms she bequeathed $1,000 to each of two friends, and left her brother the income from the residue, and directed that upon his death one of the defendants herein should receive the principal. After the will was filed for probate Nelson consulted attorney Collins, and explained, so Collins testified, that his sister had died and upon opening her safe deposit box it was found that she had an estate of some $20,000, and that in his opinion she never had any such an estate. He then went on to say, according to Collins, that in 1936 he was in Stanford Hospital, and that while there he had signed some papers to enable his sister to raise money for him, as she did. He said there were several papers presented to him; that he did not know what they were but that he had

signed them at his sister's request for that purpose; and that she must have obtained "a deed from him, or something else," because there was not "any other possible means whereby she could have had such an estate." Thereupon, as the result of an investigation made by Collins it was ascertained that she had received a gift deed to the Solano property and that in 1938 she had sold it to the Rio Farms, Inc.

The first specific attack on the findings is made against finding III which reads in part as follows: ". . . that all during the 29th of May, 1936, because of the said physical condition of said Robert M. Nelson, and because of his advanced age, the severity of the operation he had undergone on May 28th, 1936, and the effects thereof on his mind and body, he was mentally and physically incapable of transacting any business or executing any agreement or deed and unable to comprehend or understand the nature or meaning of any business transaction, agreement or deal. . . . [T]hat said power of attorney and said deed so signed by said Robert M. Nelson, so far as he was able to then understand the nature of the acts he was then performing, were for the sole and only purpose of enabling said Elizabeth A. Nelson to raise money on his behalf for his hospital and medical expenses on the security of said real property." Appellants contend that the two parts of the finding are inconsistent and uncertain, that if Nelson was not mentally competent to transact any business, he could not have been competent to place limitations and conditions upon any deed he might sign. The words "so far as he was able to then understand" make the meaning quite clear, however; in other words, the trial court found in effect that Nelson realized that he needed money, and believed that he was signing something for the purpose of enabling his sister to raise money on his behalf, but could not fully comprehend the nature of a transaction involving the conveyance of real property.

Appellants also contend in this regard that there is no evidence to support the finding that Nelson was incompetent when he executed the deed. The testimony of his physician, Dr. Bunnell, however, is ample support for the finding. The doctor testified, upon being asked to state his opinion as to Nelson's mental condition on the day he executed the deed: "I believe that his mental condition on that day, which was the day following his operation, was at quite a low ebb.

By that I don't mean hallucinations or delusions but I mean that his vitality was quite low. He was toxic in that he was absorbing all the products of the operation, the serum and the blood turned loose in his system, and he also had just recovered from broken compensation of the heart and from damming back of urine, so that he was toxic from absorption of waste products. Now I am sure that a man the first day after an operation of that magnitude, which was a serious operation, is in no condition mentally to execute some legal document of importance.'' Dr. Folte, called as an expert witness by defendants, expressed a contrary opinion, and the notary Schord testified that to the extent that Nelson knew what he was doing when he signed the deed, he appeared to be competent to transact business. But the question of the weight to be given their testimony was one for the determination of the trial court; and with reference to Dr. Folte's opinion, the evidence shows that he had never seen Nelson, and that the opinion expressed by him was based solely on an examination of the hospital records, which consumed about half an hour before he took the witness stand. In any event, the most that can be said for the testimony of both witnesses is that it merely raised a conflict with that given by Nelson's attending physician, Dr. Bunnell.

Nor can we agree with appellants' contention that there was no showing that the deed was executed for a limited purpose. In this regard the evidence shows without conflict that Nelson knew he did not have money enough to pay the expenses of his operation, and that the sole purpose of the execution of the power of attorney was to enable his sister to raise the money for him; it also shows that when Miss Nelson explained to Jacoby the purpose for which she wanted the power of attorney, he advised her that the more expeditious way of handling the matter would be to obtain a deed to the property belonging to her brother; and she instructed Jacoby to prepare the deed. So far as the record shows, nothing was said to Nelson about the plan to raise the money through the medium of a deed until the day following the operation, when the deed was presented to him for signature, at which time he was told by Miss Nelson, so Schord testified, that the purpose of the deed ''was to get money in a hurry to pay his expenses''; and that Nelson nodded his head and signed the deed.

In behalf of defendants evidence was introduced as to declarations having been made by Nelson after he left the hospital and after his sister's death to the effect that he had deeded the property to his sister under some sort of an agreement that she would take care of him the rest of his life. But, on the other hand, the testimony given by the witnesses as to the circumstances leading up to and attending the execution of the deed, shows no such agreement. To the contrary it appears therefrom without conflict that the sole purpose of having the property conveyed to Miss Nelson was to enable her to raise money thereon to pay the expenses of her brother's operation. At the most, the evidence relating to Nelson's post-declarations merely raised a conflict on the issue as to whether the conveyance was made for a limited purpose, and such conflict was one to be resolved by the trial court.

Another portion of finding III reads as follows: "The Court finds that on said 29th day of May, 1936, said Elizabeth A. Nelson, well knowing that he did not, and could not, then understand, and was not then capable of understanding the nature of any such transaction, and with intent to obtain title to said real property and to deprive said Robert M. Nelson thereof, procured and obtained the execution by him of a deed wherein and whereby he purported to grant and convey to her the said two parcels of real property. . . ." Appellants contend that there was no evidence to support this finding. We agree with appellants that the evidence fails to show that Miss Nelson took advantage of her brother's condition and designedly secured the deed from him with the intention of depriving him of his property. Quite to the contrary, the evidence shows that the matter of securing the deed was advised by Jacoby in order that Miss Nelson might promptly and without difficulty raise the necessary money on the property to take care of the expenses of her brother's operation; and that Miss Nelson merely followed his advice. But the evidence further shows and the trial court found that after the property had been thus conveyed to her for such limited purpose, she did not carry out the trust but sold the property and appropriated the proceeds of the sale to her own use. Therefore, it is immaterial to a determination of the appeal whether Miss Nelson did, as the trial court found, procure the deed from her brother designedly with the intent to deprive him permanently of his property.

■ Appellants pleaded the statute of limitation and laches, and the adverse finding thereon (finding IV) was "that on or about October 5th, 1938, said Robert M. Nelson ascertained and learned for the first time that the document signed by him on May 29th, 1936, was, or purported to be, a deed conveying to said Elizabeth A. Nelson said two parcels of real property, and, at the same time he also learned for the first time that said Elizabeth A. Nelson had, on or about the 14th day of February, 1938, sold and conveyed all said real property to Rio Farms, a corporation." The court then went on to find that some time prior to the date of the gift deed Nelson executed a lease to the property for a term expiring on November 1, 1938, at a monthly rental of $50; that Miss Nelson sold the property subject to that lease, but that Nelson continued to receive the rentals until after his sister's death, and "that because said rentals under said lease were so continuously paid to said Robert M. Nelson, he did not know, and had no cause to suspect, that he was not still the owner of said land." Appellants argue that there "is no support whatsoever in the record for this finding other than in the testimony of" attorney Collins, which was admitted over appellants' objection that it was incompetent, irrelevant and immaterial, hearsay, a matter between attorney and client, and that the testimony was offered in disparagement of a deed made by the declarant. In holding that the testimony was admissible the court stated that it based its ruling on the authority of *O'Dea* v. *Hibernia Savings & Loan Soc.*, 119 Cal.App. 622 [7 P.2d 318], and obviously the decision therein supports the trial court's ruling. It is there said: "It is argued that the findings of fact are not supported by competent evidence in that this evidence consisted of parol testimony of declarations of the deceased made after the execution of the instrument. This testimony the appellant claims to be incompetent as in disparagement of the written document. But there is a well-recognized exception to this rule that, when the intention or state of mind of the alleged donor is involved, evidence of declarations made by him before or after the transaction is admissible though the declarations were not made in the presence of the adverse party. [Citing cases.]" The same doctrine is stated thus in the later case of *Whitlow* v. *Durst*, 20 Cal.2d 523 [127 P.2d 530] as follows: "When intent is a material element of a disputed fact, declarations of a dece-

dent made after as well as before an alleged act that indicate the intent with which he performed the act are admissible in evidence as an exception to the hearsay rule, and it is immaterial that such declarations are self-serving.'' In this connection it is also held that such declarations are not admitted to prove the truth of the statements made, but as evidence bearing upon the issue of the intent with which the declarant performed the act in question. (*Bridge* v. *Ruggles,* 202 Cal. 326 [260 P. 553].)

Appellants argue, however, that while under the rules above stated Nelson's declarations to Collins may be considered on the issue of the intent with which he executed the deed, such declarations may not serve as the basis for a finding as to when he first discovered that the document he signed was a deed. It would seem to be immaterial, however, as to when Nelson first discovered that the instrument he signed was a deed, for in any event his cause of action for conversion did not arise until Miss Nelson sold the property in violation of the trust. That was in February, 1938, and Nelson filed his action in January, 1939, which was well within the period fixed by the statute. The real question involved is, therefore, whether Nelson was guilty of laches in not bringing the action at an earlier date. The law is well settled that laches is an affirmative defense which must be alleged and proved by the party asserting such defense.

Consequently, the burden was upon appellants to establish that Nelson failed to file his action for conversion within a reasonable time after discovering that the property had been sold in violation of the trust; and this they failed to do. In fact, Zedd S. Riggs, one of the executors of Miss Nelson's will and her business advisor, was called as a witness by appellants and testified that Nelson came to him a day or two after Miss Nelson's death (which occurred in September, 1938) and talked of business affairs, and that during the conversation the following was said: ''Mr. Nelson asked me, 'What did she do about the ranch?' And I said, 'That was sold to Rio Farms, because it was not producing much income.' He said, 'I wondered about that'.'' Furthermore and entirely aside from the matter of Nelson's declarations, there is the testimony of Collins to the effect that Nelson called at his office in October, 1938, to consult him with reference to the matter, and that in order to ascertain whether or not the property

had been sold Collins sent Nelson to Fairfield, Solano County, to obtain a report from the title company. ▉ We are of the opinion, therefore, that there is nothing in the attack made by appellants on finding IV which would call for a reversal.

▉ Appellants also contend that the finding that Miss Nelson gave no consideration for the deed is without evidentiary support. This contention is based largely upon the evidence that she supported him and provided him with a home after he was discharged from the hospital, and paid all his bills and expenses, until her death, and then by her will left him the income from her estate for the rest of his life. The evidence also shows, however, that for more than two years Nelson turned over to her the rent checks from the property, amounting to $50 a month, and by the use of the power of attorney she obtained the undisclosed contents of his safe deposit box and what money he had in a savings account; and that she also collected the dividends from the Pacific Telephone and Telegraph stock she had taken as the major part of the payment of the property. There is no evidence showing that the moneys and assets so received by her were less than the total amount paid out by her in behalf of her brother. In that state of the record it cannot be said that the trial court was not justified in finding that there was no consideration for the deed.

▉ Finding XII contains findings of ultimate facts, based upon the findings above discussed and found to be supported by the evidence. Therefore this finding likewise is supported by the evidence.

▉ Appellants argue generally in regard to the sufficiency of the evidence that in a case such as this, the deed is presumed to convey absolute title and the burden of proving it did not do so is upon plaintiff, and that to overcome this presumption plaintiff's proof must be "clear, satisfactory and convincing." However, the courts have repeatedly held that the question as to whether the evidence is "clear and convincing" or sufficient to sustain a judgment for the plaintiff "must be determined by the trial court," and that the determination of the trial court will be accepted "as conclusive" on appeal. (25 Cal.Jur., Trusts, § 114, p. 248, and cases cited; 11 Cal.Jur. 10-Yr.Supp. 25, and cases cited.) ▉ In this connection it should be stated that the presumption and burden of proof rule contended for by appellants does not apply where a confi-

dential relationship is shown to exist between the parties at the time of the execution of the deed. Here the court found that such relationship did exist, and it would seem that the evidence is sufficient to support such finding. *(Steinberger* v. *Steinberger,* 60 Cal.App.2d 116 [140 P.2d 31].) However, even assuming that such relationship did not exist, the evidence is legally sufficient to sustain the trial court's findings under the rule contended for by appellants.

 Appellants also call attention to the principle that escheats are not favored in law, and state that this principle is applicable here for the reason that the estate of Robert Nelson after the payment of claims and costs of administration will escheat to the state. They argue, therefore, that any doubts that the court may have should be resolved in their favor. This element was doubtless taken into consideration by the trial court in deciding the cause on the merits; and obviously the appeal must be determined upon the evidence and the law applicable thereto, regardless of who may be the recipients of the estate of Robert Nelson.

 As stated, the court allowed interest on the judgment from the date of the sale of the property to the date of judgment. Appellants contend that the judgment for interest was improper for the reasons that plaintiff did not ask for interest in his complaint, and that this is an action to establish a trust and the amount of damages was unliquidated until after trial, and therefore interest was not allowable. As to the first point, it has been held that ''When interest is allowable, judgment may be rendered therefor, even though not prayed for in the complaint. *(Perry* v. *Magneson,* 207 Cal. 617 [279 P. 650].)'' *(Deaux* v. *Trinidad Bean & Elevator Co.,* 8 Cal.App. 2d 149 [47 P.2d 535].) There are several answers to the second point. As held in *Bare* v. *Richman & Samuels, Inc.,* 60 Cal.App.2d 413 [140 P.2d 895], quoting from 15 Am.Jur. 583, ''The more liberal view now prevails that interest will be allowed as damages where the demand, although unliquidated is of such a nature that the amount is capable of ascertainment by mere computation, or can be established with reasonable certainty, *or determined by reference to well-established market values.''* Also it is held that where a trustee wilfully converts trust property to his own use, he is liable for interest. As said in *Guardianship of O'Connor,* 28 Cal. App.2d 527, 530 [83 P.2d 65] : ''The applicable rule of law is

found in the early case of *Wheeler* v. *Bolton*, 92 Cal. 159, 172 [28 P. 558], where the court said: 'The general rule applicable to an executor, as well as to any other trustee, is, that, except in cases in which he has been guilty of some positive misconduct or willful violation of duty, he is not to be charged with compound interest. In cases of mere negligence, no more than single interest is ever added to the loss or damage resulting therefrom. In cases where he has mingled moneys belonging to his trust with his own funds, and used them for his own advantage, courts have charged him with compound interest, upon the theory that in the absence of evidence to the contrary, he will be presumed to have received such profits from their use.' In *Estate of Piercy*, 168 Cal. 755, 757 [145 P. 91], the earlier cases are cited to the point that, when the executor has been guilty of willful violation of duty, or misapplication of the funds of the estate to his own use, there is no room for discretion, but the beneficiaries are entitled to compound interest. In *Gaver* v. *Early*, 191 Cal. 123, 125 [215 P. 394], the court, following the same principle, ruled that such interest should run from the dates of the respective misappropriations. The same rule was followed in *Estate of McLellan*, 8 Cal.2d 49, 55 [63 P.2d 1120]." Therefore, under these rules, it would seem not only that the allowance of simple interest was not improper, but that the court would have been justified in charging compound interest. Appellants also argue in this regard that the court was not justified in allowing interest on the proceeds of the sale for the same period of time that Nelson was receiving the rentals from the property; but as stated, it is admitted that he did not cash the rental checks himself, but endorsed them over to his sister, who deposited them in her own bank account.

Appellants also assert that plaintiff's complaint and his proof fail to establish a cause of action in that there is no allegation or proof of reimbursement, or offer of reimbursement, of funds paid by Miss Nelson for the benefit of her brother. But no evidence was offered that Miss Nelson actually raised money on the property with which to pay her brother's hospital expenses, nor that the money in his savings account which she withdrew through her general power of attorney was not sufficient for such purpose; furthermore, there is no direct evidence that the later support she furnished

her brother and the payment of his bills was in return for the deed of the property. Under such circumstances Nelson was not required to make tender of the amount of money she expended in his behalf in order to maintain his action for the conversion of his property.

The judgment is affirmed.

Peters, P. J., and Ward, J., concurred.

A petition for a rehearing was denied March 31, 1945, and appellants' petition for a hearing by the Supreme Court was denied April 30, 1945. Shenk, J., and Schauer, J., voted for a hearing.