[Civ. No. 17892.   Second Dist., Div. Three.   Apr. 26, 1951.]

UNITED STATES CREDIT BUREAU, INC. (a Corporation), Plaintiff and Appellant, v. JAMES R. SANDERS et al., Defendants and Appellants; SEABOARD FINANCE COMPANY (a Corporation), Cross-Defendant and Appellant.

Hayes, Bletz & Lawson for Plaintiff and Appellant.

Hiram McTavish, Wm. B. Gilroy and A. W. Brunton for Defendants and Appellants.

Bromley, Ritter & Lindersmith and H. E. Lindersmith for Cross-Defendant and Appellant.

SHINN, P. J.—United States Credit Bureau, Incorporated, a corporation, as assignee of Seaboard Finance Company, brought this action to recover the amount of alleged deficiencies remaining on two promissory notes given by James R. Sanders and Marion E. Sanders to Seaboard secured by two chattel mortgages on motor vehicles they had purchased, after foreclosure, and sale of the security by Seaboard. Defendants Sanders answered and filed a cross-complaint bringing in as a cross-defendant, Seaboard Finance Company, which answered the cross-complaint. Cross-complainants sought to recover all sums they had paid on the purchase prices of the

vehicles, including sums paid on the mortgages, claiming the transactions to have been illegal.

The pleadings raised the following issues: (1) Whether Seaboard was a "seller" of the motor vehicles upon which Sanders and wife gave the chattel mortgages; (2) whether Seaboard fraudulently represented that the motor vehicles or some of them were in good condition when they were in a defective condition; (3) whether Seaboard gave Sanders and wife the notices they were entitled to receive before the security was sold, and (4) whether the amounts of the sales represented the reasonable value of the mortgaged property. The views we entertain with respect to the first issue render it unnecessary to consider the others. The findings, however, were against cross-complainants on the fraud issue. Although it was clearly shown that one of the trucks purchased by Sanders was practically useless and the other required expensive repairs, the court found that Seaboard did not falsely represent their condition and this finding has support in the evidence.

The cross-complaint alleged that Seaboard was the owner of the vehicles and sold them to cross-complainants. The court found that Seaboard was not the owner but that it had the power to and did sell the equipment, and was a "seller" thereof. The significance of this finding is that if Seaboard was a "seller" of the vehicles and took the notes and chattel mortgages as security, it was required by section 2982 of the Civil Code to set forth therein the following items: (1) The cash price of the personal property described in the conditional sale contract (chattel mortgage); (2) the amount of the buyer's down payment, and whether made in cash or represented by the net agreed value of described property traded in, or both, together with a statement of the respective amounts credited for cash and for such property; (3) the amount unpaid on the cash price, which is the difference between items 1 and 2; (4) the cost to the buyer of any insurance, the premium for which is included in the contract balance; (5) a description and itemization of amounts, if any, which will actually be paid by the seller or his assignee to any public officer as fees in connection with the transaction, which are included in the contract balance; (6) the amount of the unpaid balance, which is the sum of items 3, 4 and 5; (7) the amount of the time price differential; (8) the contract balance owed by the buyer to the seller, which is the sum of items 6 and 7; (9) the number of installments required to

pay the contract balance, the amount of each installment, and the date for payment of the installments. The finding was that the chattel mortgages did not set forth these statements. The evidence supports this finding. The court concluded that the notes and chattel mortgages were void and awarded cross-complainants judgment for the amounts they had paid in the transactions in the total principal sum of $6,824.38. United States Credit Bureau and Seaboard Finance Company appeal from the judgment. Cross-complainants also appeal, claiming the judgment should have included interest.

Although the issues of fact were quite simple, the court made 49 findings, at least 40 of which were unnecessary. There were findings on all the allegations of the pleadings that were not controverted, as well as those that were, and upon any number of evidentiary matters. A great deal of labor on the part of counsel and the court would be avoided if findings were confined to the ultimate issues, as they should be.

The principal question on the appeal of Seaboard and plaintiff is whether there was evidence to support the finding that Seaboard was a "seller" of the vehicles. ▌ The duty is the same where a seller takes back a chattel mortgage as where he sells on a conditional sale contract. (*Carter* v. *Seaboard Finance Co.*, 33 Cal.2d 564 [203 P.2d 758].) "Seller" is defined by section 2981 of the Civil Code as "a person who sells or leases the property under a conditional sale contract." Seaboard did not own the vehicles or any of them. It did, however, hold a blanket chattel mortgage on one of them and four other vehicles of the same owner. Also, through its agent, Brace, it assisted the owners in selling the property and it advanced the amounts of the two promissory notes to the Sanders to finance their purchases.

On September 17, 1946, Sanders purchased an International truck and Challenge trailer for $10,628, including the cost of insurance. The truck had formerly belonged to System Freight Service and had been sold with several other pieces of equipment to Charles Moose. At that time Pacific Finance was registered as legal owner and System Freight Service as registered owner. Both signed releases, and the pink slip on the International was placed by Moose with Bank of America, which financed the purchase. The truck was placed by Moose for sale with truck dealers Maloney and Temple on the dealers' lot, where Seaboard had 25 or 30 other trucks for sale. Sanders, who was not a trucking man, decided to go into the business and inspected a truck on the lot of one

"Honest John." He was referred to Mr. Brace, manager of Seaboard's truck department. Brace was unwilling to finance purchase of the "Honest John" truck but told Sanders he had one of his own which he would finance. He put a price of $9,500 on the International truck and a new Challenge trailer. Neither Brace nor Moose informed Sanders that the truck belonged to Moose. At Brace's direction, Sanders inspected the two vehicles at the Maloney and Temple lot where he discussed the deal with Maloney and Brace. He then went to the Seaboard office where the terms of the deal were worked out. Brace arranged with Moose, who was an insurance man, to insure the truck and trailer for a premium of $890.50. This and other sums were included in the price of the vehicles of $10,628. Sanders gave Maloney and Temple a check for $2,500 and executed a note and chattel mortgage to Seaboard for $6,128. On instructions from Sanders, Seaboard paid Maloney and Temple $7,237.50 and Moose $890.50. On September 20, 1946, the International was registered with the Department of Motor Vehicles in the name of Seaboard as legal owner and Sanders as registered owner. The Challenge trailer was registered in the same names and the two sales were reported as having been made by Maloney and Temple, dealers, to Sanders. There was no evidence that Seaboard had any interest in either of these vehicles until it took the chattel mortgage from Sanders.

The second transaction was entered into October 7, 1946. Seaboard held a chattel mortgage on several trucks and trailers which belonged to one Gannon, who was delinquent in his payments and had arranged with Brace that he would sell most of the equipment and reduce his debt. Brace proposed to Sanders that he take over the Gannon trucks. Sanders was unable to finance the deal. Brace put a price of $8,500 on a White tractor, two Freuhauf trailers and a dolly for $1,000 down and $7,500 on a note and mortgage in favor of Seaboard. He directed Sanders to a lot where trucks in which Seaboard was interested were kept. Sanders inspected the equipment and returned to Brace's office where Mrs. Sanders gave a check for $1,006 payable to Gannon, and Mr. and Mrs. Sanders executed in favor of Seaboard their note and chattel mortgage on the truck and trailers for $7,500. The check was endorsed by Gannon and deposited to the account of Seaboard. Gannon was given credit upon his account with Seaboard for the amount of the sale to Sanders. Brace did not represent to Sanders that either he or Seaboard owned the White truck

and trailers. He stated they were owned by Gannon, but that Gannon was in financial difficulties and that the equipment would have to be sold. Although he had made an arrangement with Gannon that most of it would be sold, no prices had been agreed upon for the different units. However, at the request of Brace, the White truck and trailers had been placed on a lot for sale, and Gannon testified that he had surrendered possession of them to Seaboard for the purpose of sale. He also testified that he understood they had been repossessed and that Brace had authority to sell them, although it was understood that the prices would be agreed upon. Brace fixed the price on the White truck and trailers and Gannon agreed to it.

It is earnestly insisted by appellants that Seaboard was not a "seller" in either transaction within the meanings of sections 2981 and 2982, Civil Code.

We shall consider first the sale of the White truck and equipment. In the sale to Sanders Seaboard received $1,006 in cash and a separate chattel mortgage covering the equipment which Sanders bought. Six dollars of this sum was for a registration fee. Whether Seaboard acted as a seller depends upon what constitutes one a seller of a motor vehicle with respect to compliance with the statute. The term "seller" is not one which has a single, exclusive meaning. Ordinarily a seller is the owner of the property sold, and a sale means the parting with title to personal property for a consideration, usually money. But where the term is used in a statute we must look to the legislative intent for enlightenment as to the sense in which the word was employed. In *Carter* v. *Seaboard Finance Co.*, 33 Cal.2d 564 [203 P.2d 758], Seaboard was held to be the seller of a Sterling truck and Freuhauf trailer, within the meaning of the Civil Code sections, although it was not the owner. It had repossessed the vehicles and had given the five days' notice required by the mortgage of its intention to sell them. In holding that one need not be the owner to be a "seller" of motor vehicles, the court said (p. 572): "Its interest was tantamount to complete ownership as far as its power to deal with the vehicles was concerned. Houston, the mortgagor, was not involved. He received no money, did not participate in the sale and had no knowledge of or any apparent interest in the transaction. The defendant's agent, Brace, handled it and made all necessary arrangements." In the present case the court found that Seaboard had the power to make a binding sale of the

White truck and trailers which would and did pass title. Seaboard insists that the evidence does not show that it had authority to make a sale that would be binding on Gannon, as it had in the Carter case, and argues that without such authority it could not have been a seller. We cannot agree. The evidence that Gannon had surrendered possession of the property, and that Seaboard did negotiate and effect a sale pursuant to its understanding with Gannon, warranted the trial court in finding that Seaboard had sufficient authority in the matter to constitute it a "seller," even if it could not convey title. It would have been an idle act for Seaboard to declare a forfeiture and give notice of sale when the vehicles were virtually in its possession and were being offered for sale. The evidence was conclusive to the effect that Gannon had authorized Brace to find buyers for the mortgaged property. The Gannon mortgage was not in evidence, but if we assume, as the parties do, that it called for notice of foreclosure and sale, it is clear that Gannon had waived such notice. In determining whether Seaboard was a "seller" consideration should be given to the duties which the law imposes upon a seller and to the responsibilities which Seaboard assumed in the transaction. ■ The word should be given an interpretation consistent with the purpose of the act rather than one which would tend to defeat the purpose. The requirement that the seller must cause to be set forth in the conditional sale contract or chattel mortgage all the items which go to make up the total price was stated in the Carter case to be "to protect purchasers of motor vehicles against excessive charges by requiring full disclosure of all items of cost." With respect to the sale of the White truck and trailers, Seaboard's agent, Brace, set a flat price which included all items of cost, and prepared the chattel mortgage without stating therein any of such items. This was done with knowledge that the owner, Gannon, would be paid $1,006 in cash, which would be turned over to Seaboard, and receive credit upon his indebtedness, and that he was furnishing nothing but the registration certificates endorsed by those who were on record with the Department of Motor Vehicles as registered and legal owners. He had nothing to do with the negotiations. It was to be inferred that the price and terms of the sale had been agreed on by Gannon and Brace before they were quoted by Brace to Sanders. Thus, Seaboard, through the manager of its truck department, assumed the responsibility which rested upon a seller to set forth in the chattel mortgage the

items which were included in the sale price of the vehicles. In reality Sanders was making an installment purchase, although the balance of the price above the down payment was represented by a chattel mortgage instead of a conditional sale contract. Gannon was not interested in the items of charges that were included in the chattel mortgage and was not shown to have had knowledge of them. He was selling for cash, except for his participation with Seaboard in the transaction, with full knowledge of the taking of the mortgage. If neither he nor Seaboard was required to set forth the items of the indebtedness a common class of transactions would be beyond the reach of the law. But we think the form the transaction took did not excuse compliance with the statute on the part of either of them. ■ One who voluntarily places himself in a position where it becomes his duty to render compliance with legal requirements which rest upon a seller should not be heard to say he was not a seller. ■ And so, when an owner of a motor vehicle permits another to find a buyer, point out the property, negotiate the price and terms of a time sale, prepare the papers, attend to their execution, receive and apply the money paid to incidental expenses and to a debt due the agent from the owner, and on behalf of the owner report the sale to the public authorities as required by law, the owner in the meantime having nothing to do with the transaction except to agree to the price and sign an instrument of transfer, the agent should be regarded as a seller within the meaning of the code sections. ■ It was not necessary here for Seaboard to have acted under the power of sale conferred by the mortgage. When it is considered that Gannon had waived the formalities of foreclosure and sale of his vehicles by Seaboard, the White truck transaction comes within the reasoning and holding of the Supreme Court in the Carter case that Seaboard was a seller with respect to the Sterling truck and Freuhauf trailer there involved.

As to the sale of the International it is said, correctly, that Seaboard had no interest whatever in the truck and trailer except to finance the purchase of the same by Sanders. Moose testified that he was the owner and received the entire sum for which the vehicles were sold to Sanders. Bank of America released its interest when Seaboard took its mortgage. There was conflicting evidence as to whether Brace at one time had some interest in the equipment purchased from System but in view of the findings this question becomes immaterial. There was no evidence that the amount of $2,500, which was the

cash payment, included any items which were to be paid out by Moose for insurance or any other charges. Presumably these charges, such as they were, in addition to the insurance, went into the note that was payable to Seaboard.

Brace and Moose had previously engaged in a similar transaction. When Moose purchased the International he acquired, among other vehicles, a General Motors truck. Brace negotiated the sale of this truck and trailer to one Austin Carter, who was the plaintiff in *Carter* v. *Seaboard, supra.* Seaboard financed the sale to Carter on a chattel mortgage. It was determined in the trial court that Seaboard was not a seller of the General Motors truck and on appeal it was held that the evidence supported this finding, since the trial court had impliedly found that Seaboard "was neither agent nor principal in the sale of that truck and trailer, but merely financed the purchase thereof by plaintiff." The decision is relied upon by appellant as if it had been held as a matter of law that Seaboard was not a seller. This was not the decision. The evidence in the case was stated in *Carter* v. *Seaboard Finance Co.,* (Cal.App.) 193 P.2d 985. ■ The fact that one trial court found that Seaboard was not a seller of the General Motors truck and another trial court found, under somewhat comparable circumstances, that it was a seller of the International truck does not prove that either finding was contrary to the evidence. Such factual deductions are for the triers of the facts and are binding upon a reviewing court unless deemed unreasonable. ■ In the Carter case the trial court did not draw an inference from the conduct of Brace and Moose that Seaboard was represented to be the owner or was acting as the agent of Moose in negotiating the sale of the General Motors truck. In the present case it did draw such inferences with respect to the sale of the International and they were, in our opinion, reasonable inferences. We are, therefore, bound by the implied finding of the trial court that Seaboard acted as the undisclosed agent of Moose in making the sale, even though a contrary finding would not have been untenable. Moreover, Brace did not tell Sanders that Moose owned the truck nor did Moose tell him so when he and Sanders discussed the matter of insurance. Thus, Sanders was led to believe that he was dealing with Seaboard as owner of the vehicles. So far as he knew, Seaboard was the seller. The authority of Seaboard in this completed transaction could not be questioned by Moose, and we see no reason why Seaboard

should be allowed to question its own authority so far as Sanders is concerned. It was Seaboard's financing which created the necessity for compliance with the statute. The chattel mortgage was the only instrument which called for an itemization of the amounts which added up to the amount of the note, and the sums that were included were all payable to Seaboard. We do not see how the agent, Seaboard, having voluntarily assumed the position of an owner and having thus assumed the duty of complying with legal requirements, could take a chattel mortgage which would be valid when it would have been unenforceable if it had run in favor of Moose.

There was support in the evidence for the finding that Seaboard was a seller of the International. So far as the sale of this truck is concerned, our approval of the finding that Seaboard was a seller rests upon a combination of the various evidentiary factors we have mentioned. They distinguish the case from one in which a lender of money on a chattel mortgage of a motor vehicle does not pretend to be the owner of the property and does not negotiate and effect a sale of it.

There are other points to consider, although they are not mentioned in the briefs. ▮ The theory of the recovery is that there should be restoration of the sums paid by Sanders as for money had and received. Seaboard did not receive nor benefit by the down payment of $2,500 on the sale of the International and is under no duty to restore that sum, or to see that it is restored. Its liability in that transaction is limited to the sums received on account of the note and mortgage. (*Pollak* v. *Staunton,* 210 Cal. 656 [293 P. 26].) ▮ In the sale of the White truck and trailers it did receive for credit on the Gannon mortgage the down payment of $1,006, as well as the sums thereafter paid to it on the mortgage. The fact that Gannon, also, was a beneficiary of the down payment should not excuse Seaboard from making restoration.

▮ Cross-complainants were chargeable with the reasonable value of the use of the equipment while it was in their possession. ▮ ▮ In separate paragraphs they alleged these sums to be $1,000 for the International truck and trailer, and $750 for the White truck and equipment. In the answer there are denials of these paragraphs, without allegation as to the value of use in either case. In the maze of the confusing, redundant and inconsistent findings are findings that the allegations of the two paragraphs of the cross-complaint are untrue, without any finding as to the value of the use. The

denial of a specific sum alleged is "an admission of the specific proposition embraced in the averment to which it is directed. It is evasive and insufficient to raise an issue." (*Alberts* v. *American Casualty Co.*, 88 Cal.App.2d 891, 896 [200 P.2d 37].) The denials of the allegations of the two mentioned paragraphs were admissions that value of the use was substantially the same as the amounts alleged. If, upon a retrial, the parties wish to make an issue of the value of the use of the vehicles, and have it determined, and desire to amend their pleadings, they should be allowed to do so.

We come now to the cross-appeal by Sanders and wife. The judgment was for the total amount paid on two contracts. It is contended that it should have carried interest on the several payments. The point is well taken. The amounts were readily ascertainable and interest on them should have been allowed. (Civ. Code, sec. 8237; *Bare* v. *Richman & Samuels, Inc.*, 60 Cal.App.2d 413 [140 P.2d 895]; *Mary Pickford Co.* v. *Bayly Bros., Inc.*, 12 Cal.2d 501, 526 [86 P.2d 102].) However, interest should run only from the respective dates when Sanders ceased to use the equipment.

The judgment should be for the amounts paid by cross-complainants in the two transactions less the sum of $2,500, the down payment on the International purchase; if the value of the use of the vehicles is determined, those sums should be deducted and interest on the balance from the dates when Sanders ceased to use the equipment to date of a new judgment should be added.

The judgment is modified accordingly. The cause is remanded with directions to take further evidence if necessary and to render and enter judgment for cross-complainants against Seaboard Finance Company in accordance with the views herein expressed. No costs to either party on the appeal.

Wood (Parker), J., concurred.

Vallée, J., being disqualified, did not participate.

The opinion was modified to read as above printed on May 4, 1951.

Defendants and appellants' and cross-defendant and appellant's petitions for a hearing by the Supreme Court were denied June 18, 1951.