[Civ. No. 5960. First Appellate District, Division Two.—January 23, 1928.]

C. F. BORTON et al., Appellants, v. GARNETT A. JOSLIN, Administrator, etc., et al., Respondents.

Newby & Palmer, Nathan Newby and Dee Holder for Appellants.

C. E. Joslin, Rufus L. Horton and Waldo M. York for Respondent Joslin.

Rufus L. Horton for Respondent Hammond Lumber Company.

L. E. Tripp, R. H. Spotts, H. C. Allen, Jr., L. L. Otis and C. F. Adams for Respondent Title Insurance and Trust Company.

NOURSE, J.—Plaintiffs sued to have certain deeds, absolute in form, declared to be mortgages, for an accounting by defendants, for a conveyance of certain real property to plaintiffs and the quieting of their title thereto. The cause was tried before the court and resulted in a judgment for the defendants, from which the plaintiffs have appealed upon a bill of exceptions.

For some time prior to May 3, 1916, the plaintiffs were the owners of the property described in the complaint subject to an indebtedness of $22,000, secured by a trust deed. This property was the community property of the plaintiffs, although the deed thereto was made in the name of Laura E. Borton as sole grantee. Her husband, C. F. Borton, acting as her attorney-in-fact, represented to the defendants that it was her separate estate, and upon these representations he induced the Hammond Lumber Company on May 3, 1916, to accept a deed executed in her name alone conveying the property to the company as security for an indebtedness which was then due the company from the plaintiffs. Prior to April 10, 1917, the plaintiffs became indebted to certain claimants in the sum of $9,302.39 for work, labor, and materials in the construction of the Borton Apartments upon other property, the title to which also stood in the name of Laura E. Borton. These creditors were all represented by

defendant C. E. Joslin, an attorney at law, and were at the time threatening to file liens upon the property upon which the Borton Apartments were being constructed. For the purpose of satisfying these creditors and saving the Borton Apartments from the cloud of liens which were about to be filed, the plaintiffs and defendant C. E. Joslin agreed that the plaintiffs should convey the property described in the complaint to the Title Insurance and Trust Company, subject to the encumbrances, in full satisfaction of the indebtedness owing the lien claimants, and that the latter, in consideration thereof, would release their claims on the building. In accordance with this agreement deeds were executed by Laura E. Borton and the Hammond Lumber Company to the Title Insurance and Trust Company, absolute in form, and purporting to convey to the grantee clear title to said property. At the same time plaintiff C. F. Borton, again acting as attorney-in-fact for his wife and representing her to be the sole owner of the property, gave directions in writing to the Trust Company by which it was authorized to sell the property for not less than $35,000 and from the proceeds of the sale to pay all fees, charges, expenses, and encumbrances against the property, and the surplus, if any, to C. E. Joslin, who was designated as sole beneficiary. At the time of the execution of these documents an option was given to Laura E. Borton running to September 30, 1917, to purchase the property subject to all encumbrances of record for the sum of $10,200, which sum was estimated to be the total amount of the demands of the lien claimants, plus attorney's fees to C. E. Joslin and interest accruing during the period of the option. As a part of this transaction the lien claimants waived in writing all claims of lien upon the Borton Apartments, accepting the equity in the property described in the complaint in full payment of their claims, and a receipt in full payment and discharge of all claims was given to the plaintiffs by C. E. Joslin, who acted throughout the transaction as attorney for the lien claimants only. Up to the time of the expiration of the option plaintiffs endeavored to find a purchaser for the property, but were unsuccessful in this and on October 5, 1917, the trust company notified them in writing that their option had expired and that all their rights thereunder had ceased. Beyond their efforts to secure

a purchaser during this period the plaintiffs have made no claim to any right or interest in the property conveyed; made no effort to pay any taxes, street assessments, or other charges against the property; made no demand for an accounting of the rents and profits thereof until about the time this action was commenced on April 3, 1924. During this period of seven years the defendants treated the transaction as an absolute conveyance of the premises. The lien claimants accepted it as a complete satisfaction of their claims. The plaintiffs treated it as a full settlement and as an accord and satisfaction of all these claims, and the defendant C. E. Joslin, as sole beneficiary, entered into possession of the premises at the time of the settlement and held possession under the conveyance, paying all taxes and street assessments levied thereon and exercising sole and exclusive ownership for himself and said creditors excepting as to a portion of the premises thereafter conveyed by the trust company at his direction, and received the monthly rentals coming from the premises and paid all costs of repairs and upkeep. Inasmuch as these rentals were not sufficient to pay these charges the expenses for the maintenance and upkeep of the property were apportioned among the various creditors according to their respective claims, but these became dissatisfied with the arrangement and sold their interests to the defendant C. E. Joslin from time to time until January, 1923, when he became the sole owner of all the interest of these claimants. The trial court found that the value of the property at the time of the conveyance in April, 1917, was $44,000, but that it could not have been sold at that time for more than $35,000. Upon this issue witnesses testified that its value at that time was from thirty to thirty-five thousand dollars, but that it could not be sold for the latter amount. Upon the facts herein stated the trial court found that the transaction was intended to be an absolute conveyance of the property in full satisfaction of the claims due to the creditors and that it was accepted by all parties as such. It also found upon the special issues that the plaintiffs were estopped by their actions from maintaining this suit; that they were barred by the statute of limitations and by their laches, and that they had not for more than five years before the commencement of the action been the owners of the property or of any interest therein.

On this appeal the appellants argue that the transaction was a contract between the parties which the trial court should have construed as one for the securing of the indebtedness only. In support of the argument cases are cited to the point that the construction of contracts is a question of law reviewable on appeal. The cases support the point to which they are cited but are not applicable here because this is a case where the conclusion of law depends upon the finding of facts, which, in turn, is based upon extrinsic and conflicting evidence. ■ The transaction upon its face purports to provide an absolute conveyance and, of course, the presumption is that the instrument is what it purports to be. To overcome this presumption the burden was upon the appellants to show that something different was accomplished by the parties, and this, of course, could be shown only by extrinsic evidence which in cases of this kind "must be clear, unequivocal and convincing." (*Ahern* v. *McCarthy*, 107 Cal. 382, 383 [40 Pac. 482]; *Sheehan* v. *Sullivan*, 126 Cal. 189, 193 [58 Pac. 543]; 17 Cal. Jur. 756, sec. 58.) ■ When, therefore, the parties rely upon evidence to overcome this presumption and such evidence is presented to the trial court, the finding of the trial court is, of course, conclusive on appeal unless there is no evidence in the record to support it. (*Lockhart* v. *McDougall Co.*, 190 Cal. 308, 310 [212 Pac. 1].) ■ Appellants do not seriously contend that there is no evidence in the record to support the finding of the trial court that the deed in controversy "was intended by the plaintiffs to be a conveyance in full payment and satisfaction of the claims of said creditors and that the said deed was accepted by said creditors as and for a full and complete payment and satisfaction of all their said claims"; or that "said deed was not taken as security for the payment of said claims or any of them, or that the title to said property should be taken . . . in trust for plaintiffs or either of them, or by way of mortgage in any way or manner whatsoever." Sufficient evidence is referred to in our statement of facts to sustain this finding upon the essential issue of the intention of the parties and this forces the conclusion of law that the appellants have failed to overcome by clear and satisfactory evidence the presumption which arises from the face of the deed. This being

so, it becomes unnecessary to analyze or further consider the cases cited by either party which on the one hand hold that under a particular state of facts the paper should have been construed to be a mortgage and on the other hand hold that under a different state of facts the paper there in consideration should have been construed to be an absolute conveyance. A review of the evidence in the record clearly discloses that all the parties to the transaction contemplated and intended that the deed should be an absolute conveyance of appellants' entire equity in the premises subject to an option to repurchase within a stated time; that this course was pursued because the property was overburdened with encumbrances at a time when the value had greatly depreciated because of the World War, and that because of these conditions none of the creditors and none of the respondents would have consented to any further mortgage upon the property or to any other disposition than an outright conveyance.

But the outstanding fact is that the creditors treated the transaction as a full and complete payment and satisfaction of all their claims, and that the appellants, for a period of seven years at least, treated it in the same way and made no attempt to pay these claims in any other manner or to assert any claim of ownership to the property. Mr. Pomeroy has said that in cases of this character: "the sure test and the essential requisite are the continued existence of a debt." (Pomeroy's Equity Jurisprudence, 2d ed., sec. 1196.) The purpose of a mortgage being to secure payment of a debt, the full release of the indebtedness upon the delivery of the deed is persuasive evidence that the transaction was intended to be a transfer and not a mortgage. (See *Ahern v. McCarthy*, 107 Cal. 383, 386 [40 Pac. 482].) We find ample evidence to support the trial court's finding of facts and upon these facts the only proper conclusion of law to have been drawn was that the deed was an absolute transfer of title and not a mortgage.

The trial court found that appellants' cause of action was barred by the statute of limitations, and to avoid this obstacle the appellants now argue that the transaction resulted in the creation of a voluntary constructive trust whereby the trustee became obligated to sell the property,

pay off all the existing encumbrances against it as well as the claims of the lien claimants and to pay the proceeds, if any, to the appellants. This position is, of course, wholly inconsistent with the theory that the deed, absolute in form, was intended to be a mortgage. There is an equal inconsistency in appellants' argument on this branch of the case. A voluntary trust is an obligation arising out of a confidential relation and voluntarily accepted (sec. 2216, Civ. Code), while a constructive trust arises, regardless of intention, "whenever by fraud or in breach of a fiduciary duty one uses the property of another to make a purchase in his own name." (*Lezinsky* v. *Mason Malt W. D. Co.*, 185 Cal. 240, 252 [196 Pac. 884].) But there is no evidence of any confidential relation between the parties—the appellants were dealing with the attorney for adverse claimants who was pressing these claims for collection; there is no proof of fraud, accident, mistake, undue influence, or of any other wrongful act on the part of respondents by which any of them became an involuntary trustee for the benefit of appellants under section 2224 of the Civil Code; there was no evidence of any facts which would justify a conclusion that a trust of any character to which the appellants were beneficiaries was created by either written instrument or operation of law—the two ways by which alone a trust in real property can be created. (*Sheehan* v. *Sullivan*, 126 Cal. 189, 192 [58 Pac. 543].)

In support of the judgment respondents point out that the trial court found that appellants' cause of action was barred by the statute of limitations and by their laches—that, if the transaction should be treated as a mortgage, the statute of limitations would apply, and, if it should be treated as a trust in favor of appellants, they are barred by their laches. Our attention is also directed to the finding that appellants are estopped by their conduct from asserting that the property was community. Appellants attack all of these findings, but it is not necessary to consider the rules of law involved because, upon the merits, respondents were entitled to the judgment.

Criticism is made of a number of rulings adverse to appellants on the admission of evidence. Many of the assignments of error are not accompanied by argument or citation

of authority and none of the thirty-eight assignments is claimed to have been prejudicial to appellants. We have examined the record with care and find that in each instance where the correctness of the ruling of the trial court is at all doubtful the evidence received or rejected was merely cumulative and the rulings criticised were harmless.

Judgment affirmed.

Koford, P. J., and Sturtevant, J., concurred.