[Civ. No. 22139. Second Dist., Div. One. Aug. 7, 1957.]

A. L. MURPHY, Appellant, v. W. D. WILSON, Respondent.

Porter C. Blackburn, Paul E. Gervais, Nathan Newby, Jr., and Wendell P. Hubbard for Appellant.

W. D. Wilson, in pro. per., for Respondent.

DRAPEAU, J. pro tem.*—In 1950, plaintiff A. L. Murphy contracted with the United States Reclamation Bureau to

---

*Assigned by Chairman of Judicial Council.

construct a diversion dam on the Pecos River, near Fort Sumner in New Mexico.

Unfortunately Mr. Murphy did not have enough capital to carry on his contract. He had increasing trouble financing the work. He had underestimated the cost of labor, and his bid was too low. On the trial of this action, one of the witnesses said that he left all of his profits on the desk when he picked up his contract. He had difficulty with his bonding company. And he finally got into such desperate circumstances that he couldn't meet his pay rolls or buy fuel for his motorized equipment.

In 1951, while Mr. Murphy was struggling to keep his contract going, defendant, W. D. Wilson, of Clovis, New Mexico, agreed to advance money to him. To secure repayment of this money Mr. Murphy and Mr. Wilson made what they called an escrow agreement. The agreement provided: That Mr. Wilson would make available to Mr. Murphy $50,000. That Mr. Murphy would put a bill of sale and chattel mortgage of his vehicles and equipment in use on the dam and a deed to his home in Los Angeles into the escrow. That if Mr. Murphy paid Mr. Wilson $75,000 before June 1, 1951, the conveyances would be returned to him, but if he didn't pay Mr. Wilson $75,000, the conveyances would go to Mr. Wilson.

The Reclamation Bureau declared Mr. Murphy's contract in default for failure to properly pursue the construction work, and Mr. Wilson took possession of all of the property to which title had been put into the escrow. Mr. Wilson rented and sold some of the equipment, and eventually sold the rest of it, together with Mr. Murphy's home. To use an old, old idiom, Mr. Murphy just about lost his shirt on that deal.

Now we come to this litigation.

Mr. Murphy brought this action for declaratory relief, and to adjudge the conveyances mortgages.

At the trial the parties testified that the escrow agreement was a loan of $50,000 by Mr. Wilson to Mr. Murphy, with a bonus to Mr. Wilson of $25,000.

The trial judge found that the agreement was in fact a mortgage loan, and that Mr. Murphy was charged a rate of interest "in excess of that permitted by the statutes of the state of New Mexico then in force, and the Court finds that said agreement is usurious under said statutes." The judge also found that Mr. Wilson did not foreclose on Mr. Murphy's equipment under the terms of the chattel mortgage, and that he had sold outright the equipment and Mr. Murphy's home.

Mr. Murphy appeals from a judgment for him for only $2,238.

Mr. Wilson has filed a typewritten brief in propria persona answering some parts of Mr. Murphy's brief. This court cannot see that the case of *Stiff* v. *Fogerson,* 58 N.M. 193 [269 P.2d 743], cited by Mr. Wilson, is controlling under the facts in this case. This court has had to work out the financial obligations of these two men as best it can from the record and the briefs.

The trial court found that Mr. Wilson advanced to Mr. Murphy $42,348.96.

Out of that sum Mr. Wilson paid attorneys in New Mexico $5,000, and charged that amount to Mr. Murphy.

So Mr. Murphy actually received from Mr. Wilson for construction work on the dam, $37,348.96.

It is argued in Mr. Murphy's brief that the attorneys' fee should not have been charged to him. On the trial he said, referring to one of these attorneys who prepared the loan agreement, "He was acting as my attorney, and had been for some time." And again, "I thought he was my lawyer."

Mr. Wilson said that when the escrow agreement was prepared he and Mr. Murphy told this lawyer he could act for both of them.

This court, therefore, will go along with the trial court's finding that the fee was properly charged to Mr. Murphy.

It follows then that Mr. Wilson charged Mr. Murphy, under the terms of the loan agreement, $32,651.04 more than he advanced to him.

It thus becomes obvious that the trial judge's conclusion that Mr. Murphy should have judgment for $2,238 is wrong.

This conclusion is stated in the findings of fact, as follows:

"That the plaintiff is entitled to be credited with $42,348.96, the amount received for the sale of the personal property, and $2,238.00, the amount received as rental of a portion thereof, for a total credit in the amount of $44,586.96; that defendant W. D. Wilson is entitled to credit in the amount of $42,348.96, being the total sums advanced to or on behalf of plaintiff; that plaintiff is entitled to judgment against defendant W. D. Wilson in the sum of $2,238.00."

It is also obvious that Mr. Wilson converted Mr. Murphy's property to his own use (*Gruber* v. *Pacific States Sav. & Loan Co.,* 13 Cal.2d 144 [88 P.2d 137]; *Mears* v.

*Crocker First Nat. Bank,* 84 Cal.App.2d 637 [191 P.2d 501]), for which he must pay Mr. Murphy the fair market value of the property so converted as of the date he took it into possession (*Calimpco, Inc.* v. *Warden,* 100 Cal.App.2d 429 [224 P.2d 421]), together with interest on the value of the property converted. (*Gruber* v. *Pacific States Sav. & Loan Co., supra.*) Also that Mr. Wilson must account to Mr. Murphy for rentals of the equipment.

Therefore, this court makes the following accounting between the parties:

Credit Mr. Murphy:

Equity in Mr. Murphy's home sold
 by Mr. Wilson .........................$15,000.00
Value of equipment sold by Mr. Wilson ....... 42,348.96
Rentals on equipment received by Mr. Wilson . 2,238.00

 Total ...............................$59,586.96

Credit Mr. Wilson:

Paid to Mr. Murphy .....................$42,348.96

Balance due Mr. Murphy by Mr. Wilson ......$17,238.00

Interest on the value of Mr. Murphy's property, converted by Mr. Wilson, will be computed at 7 per cent per annum from June 1, 1951. (Civ. Code, § 3336.) The basic figure for such computation will be the balance of $17,238.00 due Mr. Murphy by Mr. Wilson.

 After finding that the loan was usurious, the trial court further found that Mr. Murphy was not entitled to recover any penalty against Mr. Wilson, "by reason of the usurious nature of their agreement."

This court will have to disregard this conflicting finding.

Perhaps the fact that the escrow agreement was a loan and was usurious did not occur to any of the men who had to do with it. Mr. Wilson is a rancher, not a business man. He depended for his advice upon his banker and his lawyer. It is surprising that neither the banker nor the lawyer realized the usurious implications of a bonus of $25,000 for a loan of $50,000. And Mr. Murphy was grasping at straws to save his contract.

 But, regardless of how it came about, it is perfectly clear that this was definitely an usurious loan. The rights of the parties to this lawsuit will, therefore, have to be based upon that fact, however harsh the penalty of treble damages under New Mexico law may seem to be.

The laws of New Mexico, stipulated to be applicable to the escrow agreement, provide, "the plaintiff shall recover only the principal less the amount of interest accruing thereon . . ." (See §§ 53-608, Stats. 1941, New Mexico.)

A note is to be tested for usury with reference to the actual sum given by the lender to the borrower, and not by the face of the note. (*Taylor* v. *Budd*, 217 Cal. 262, 265 [18 P.2d 333].) And in testing for an usurious exaction a fee or bonus beyond the legal rate of interest constitutes an additional charge for interest. (*Haines* v. *Commercial Mortgage Co.*, 200 Cal. 609 [254 P. 956, 255 P. 805, 53 A.L.R. 725].)

As to the penalty the New Mexico law provides:

". . . and if the contract shall have been performed by the borrower, the person, persons or corporation who shall have received the interest shall forfeit to the borrower from whom the interest was collected, or to his heirs, executors, administrators or assigns, treble the amount of interest so collected in any cause of action brought for the recovery of the same within three years."

Computation of the penalty for usury presents a difficult problem in this case.

How should we compute it?

Is it three times the difference between what Mr. Murphy received and what he was obligated to pay under the loan agreement?—i.e., is it $75,000—$42,348.96=$32,651.04 × 3= $97,953.12?

Or is it three times the $25,000 bonus provided in the agreement?

Or should we treat the balance of $17,238 found due from Mr. Wilson to Mr. Murphy as interest collected, treble that sum, and direct judgment accordingly?

This court has come to the conclusion that the last method of computation, and measure of damages, comes more nearly within the meaning of the New Mexico law applied to the facts of this case.

The construction contract was defaulted before Mr. Wilson advanced all of the $50,000 provided for in the loan agreement. The New Mexico law says that "if the contract shall have been performed by the borrower" treble damages shall be assessed against the lender.

The trial court based its findings in part upon the assumption that the loan agreement had been performed.

Therefore, the amount of the balance due Mr. Murphy, $17,238, will be used to compute the penalty for usury, with the result of $51,714. But it is not the intention of this court to double $17,238. Mr. Murphy is to have judgment for $51,714, and that amount will include both the balance due him and the penalty for usury.

The judgment is reversed, and the cause is remanded to the superior court, with directions to make and enter judgment for Mr. Murphy against Mr. Wilson as follows:

(a) For $51,714, balance due Mr. Murphy and penalty for usury.

(b) For interest on the value of the property converted, $17,348.96 at 7 per cent per annum from June 1, 1951, to the date of such judgment.

White, P. J., and Fourt, J., concurred.