[Civ. No. 243. Fifth Dist. Dec. 17, 1963.]

WORKMON CONSTRUCTION CO. et al., Plaintiffs and Appellants, v. JOE WEIRICK et al., Defendants and Respondents.

Hyde & Olson and Floyd H. Hyde for Plaintiffs and Appellants.

Barrett & Wagner and James F. Wagner for Defendants and Respondents.

STONE, J.—Plaintiffs appeal from an adverse judgment in a declaratory relief action to have a deed absolute on its face declared to be a mortgage. The sole question raised is whether the evidence supports the findings of the trial court.

Plaintiffs purchased 160 acres of unimproved real property in Fresno County from Bank of America, guardian of the estate of an incompetent person. The purchase price was $240,000. A down payment of $60,000 was made and 32 acres were deeded to plaintiffs. The balance of $180,000 was evidenced by a promissory note payable in four annual installments of $45,000 commencing in 1956, bearing interest at 5 per cent. A deed of trust covering the remaining 128 acres secured the indebtedness, and it provided for partial releases upon payment of the annual installments. One annual installment was paid and 32 acres were released, which left 96 acres still subject to the encumbrance.

Plaintiffs' subdivision plans went awry and they were unable to meet the 1957 and 1958 annual payments. In June 1958 the Bank of America commenced foreclosure proceedings. Plaintiffs obtained extensions of time and negotiated to refinance or sell the property, without success until February 1959, when plaintiff J. J. Nagel, an attorney, through the offices of a Mr. Butler, sought a loan from defendant Weirick. According to Butler, Weirick stated that he was not interested in making a loan, but that he would be interested in purchasing the property to insure a long-term capital gain. Butler suggested that Weirick purchase the property and give plaintiffs an option to repurchase. Nagel then consulted with Weirick, satisfied him of the value of the property, and suggested that Weirick consult his tax adviser, which he did. Nagel also called Weirick's accountant to explain the proposed sale and option transaction, and thereafter prepared and forwarded to the accountant the documents to be used.

Plaintiffs and defendants entered into a written escrow agreement with the Title Insurance & Trust Company, pursuant to which plaintiffs conveyed to defendants 130 acres (34 of the 64 acres that had been released were included in the sale) for $156,000 cash, which, in turn, was paid to Bank of America in full satisfaction of plaintiffs' obligation.

Defendants gave plaintiff Workmon Construction Co. an option to purchase the 130 acres for the sum of $208,000, which could not be exercised before the 15th day of September, 1959, nor after the 9th day of March, 1961. Fifteen days' written notice of intention to exercise the option was required. Among other things, optionee agreed to pay all taxes and assessments levied against the property and keep the two deep wells and pumps in repair, in return for the

right to all revenue from the property. The optionee also paid all charges in connection with the escrow.

In a separate written instrument, plaintiffs agreed among themselves that Cora Workmon and J. J. Nagel were the owners of the option in equal shares. Defendants were not parties to this side agreement.

Pursuant to the option, plaintiffs leased the property to third parties and from the rentals paid the taxes and upkeep. They also attempted to qualify the property to meet subdivision requirements and to have it annexed to the City of Fresno.

One week prior to the expiration of the two-year option period, plaintiffs gave notice to defendants of their intention to exercise the option to purchase the 130 acres. On receipt of the notice, defendants opened an escrow, but plaintiffs failed to pay the stipulated amount within the required 15 days. Rather, they filed this action in equity, praying that the deed and option agreement be declared a mortgage, and that the difference between the amount defendants paid for the property, $156,000, and the amount necessary to exercise the option, $208,000, be declared to be usurious interest.

It cannot be denied, as plaintiffs argue, that on its face the transaction has many of the earmarks of a security transaction. They point to the difference between the amount defendants paid for the property and the amount required to exercise the option; to the 34 acres of unencumbered land included in the deed and option; to the payment by them of the escrow costs *in toto*; to their retention of possession of the property and lease of it to third parties, and their payment of the taxes and the repairs for the pumps and wells from the rents. Plaintiffs also point out that they expended money for subdivision improvements in an attempt to have the property annexed to the City of Fresno.

The cases in California are numerous, commencing with *Sears* v. *Dixon* (1867) 33 Cal. 326, holding that a court of equity can declare a deed absolute on its face to be a mortgage executed as security for the payment of a debt, and that parol evidence is admissible to show the real nature of the transaction without regard to the mode or form in which the instruments in writing were executed. (*Vance* v. *Anderson,* 113 Cal. 532, 538 [45 P. 816]; *Greene* v. *Colburn,* 160 Cal. App.2d 355, 358 [325 P.2d 148]; Civ. Code, §§ 1105, 2925.)

On the other hand, in determining the character of a deed asserted to be a mortgage, the trial court was not free to

view in isolation the aspects of the transaction pointed out by plaintiffs as indicating a defeasible title in defendants. All facts and circumstances surrounding the transaction had to be viewed in their totality by the court in determining the nature of the conveyance. ▮ A review of a determination thus made by the trial court is governed by the well established principles applicable to all questions of fact raised on appeal. In *Beeler* v. *American Trust Co.*, 24 Cal.2d 1 [147 P.2d 583], a case relied upon by plaintiffs, the Supreme Court said, at page 7: "... whether or not the evidence offered to change the ostensible character of the instrument is clear and convincing is a question for the trial court to decide. [Citations.] In such case, as in others, the determination of that court in favor of either party upon conflicting or contradictory evidence is not open to review on appeal."

Hence our review is narrowed to whether the record before us reflects any evidence of a substantial nature that supports the finding of the trial court that the deed absolute on its face was intended by the parties to be just that.

Counsel for both sides have cited many authorities, but a review of them discloses that each turns upon the parol evidence peculiar to the particular case, so that a discussion of the facts of the numerous cases would add little here. It is significant, however, that in all of the cited cases, the animating principle is the intent of the parties. (California Land Security & Development (Cont. Ed. Bar) § 4.19, p. 107.)

▮ Quite obviously the trial court treated as a critical circumstance the fact that the negotiations for plaintiffs were carried on by one of their number who was an attorney, experienced and skilled in real estate transactions, particularly subdivision development, while defendants were not represented by counsel. The plaintiff attorney prepared the conveyance, which was a deed absolute on its face, and not only did he sign it himself but he had his fellow plaintiffs sign it. He also prepared the option to purchase, which made no mention of a loan and gave no indication that the transaction was one for security. He testified that he never used the term "loan" during the oral negotiations, nor did he use it in any document. In discussing the transaction with the attorney who handled the foreclosure action for the Bank of America, the plaintiff attorney stated that he and his co-owners had sold the property to defendants.

There is nothing in the record reflecting that any of the plaintiffs ever advised either of the defendants that the pur-

chase price paid for the property was intended to be a loan. This circumstance strongly supports the finding of the trial court upholding the validity of the deed. ■ The secret intention of one party that the deed was a mortgage and the option a note does not change the character of the transaction. (*Mealy* v. *Sunland Refining Corp.*, 96 Cal.App.2d 700, 703 [216 P.2d 59] ; *Glasgow* v. *Andrews*, 129 Cal.App.2d 660, 665 [277 P.2d 400].)

In the case of *Wehle* v. *Price*, 202 Cal. 394, the Supreme Court said, at page 397 [260 P. 878] : ''It must appear to the court beyond all reasonable controversy that it was the intention of not only one but all of the parties that the deed should be a mortgage.''

■ Another very damaging bit of evidence so far as plaintiffs are concerned is an agreement prepared by the plaintiff attorney between himself and the other plaintiffs, which was not part of the transaction with defendants. This private agreement, among other things, provided that plaintiff J. J. Nagel and plaintiff Cora Workmon each owned an undivided 50 per cent interest in the option agreement and that ''neither party shall hypothecate or use said option agreement as security.'' It would be unusual, to say the least, to hypothecate an indebtedness or to use it as security, while an option to purchase real property is frequently so used. The trial court could well have concluded that this document between plaintiffs, executed contemporaneously with the escrow transaction, expressed plaintiffs' belief at that time that they had executed a deed and an option, not a mortgage and a promissory note.

Additionally, if the consideration paid for the conveyance of the property was a loan, and the deed was a mortgage and the option was a promissory note, then necessarily the option must express an obligation to pay. But at no place in the record do we find a suggestion, even by plaintiffs, that the option was an obligation which defendants could enforce.

■ In the early case of *Henley* v. *Hotaling*, 41 Cal. 22, the Supreme Court put a finger upon a critical and necessary factor in a case of this kind when it said, at page 28: ''. . . something more than a reservation of the right to repurchase, or a convenant to reconvey, must be shown, in order to convert an absolute deed into a mortgage. There is one fact which is indispensable for this purpose. A mortgage is a security for the performance of an agreement, which is usually to pay a sum of money. Leaving out of view other agreements

than those for the payment of money, it is essential that there be an agreement, either express or implied, on the part of the mortgagor, or some one in whose behalf he executes the mortgage, to pay to the mortgagee a sum of money. If there is no debt there is no mortgage. We look in vain, in this case, to find any evidence of a promise on the part of Storms to repay the purchase money, or of the existence of a debt of any kind from him to Hotaling.''

Pomeroy, in commenting upon the law applicable to a determination of whether a deed absolute was intended by the parties to be a mortgage, had this to say: ''... the sure test and the essential requisite are the continued existence of a debt. If there is no indebtedness, the conveyance cannot be a mortgage; ...'' (4 Pomeroy's Equity Jurisprudence (5th ed.) p. 583.)

It is fundamental that the character of an instrument of conveyance which purports on its face to be a deed absolute can be adjudged to be a mortgage only upon clear and convincing evidence. (*Anderson* v. *Associated Inv. Co.,* 219 Cal.App.2d 206, 211 [32 Cal.Rptr. 921].) Whether the evidence is clear and convincing is for the trial court. (*General Casualty Co.* v. *Soda,* 184 Cal.App.2d 390, 393 [7 Cal.Rptr. 536]; *Cavanaugh* v. *High,* 182 Cal.App.2d 714, 718 [6 Cal. Rptr. 525].)

From the point of view of plaintiffs the evidence is, at best, conflicting, and conflicting evidence cannot be reevaluated by a reviewing court in the circumstances here presented. (*Greene* v. *Colburn, supra; Cavanaugh* v. *High, supra.*)

The judgment is affirmed.

Conley, P. J., and Brown (R.M.), J., concurred.