[Civ. No. 25853. First Dist., Div. One. Sept. 3, 1970.]

MAYNARD MUNGER, JR., Plaintiff and Respondent, v.
ROBERT MOORE, Defendant and Appellant.

**COUNSEL**

Bruce Oneto for Defendant and Appellant.

Field, DeGoff & Rieman and Sidney F. DeGoff for Plaintiff and Respondent.

## OPINION

**MOLINARI, P. J.**—Defendant appeals from a judgment in the sum of $30,000 plus accrued interest entered in favor of plaintiff after a trial by the court upon a supplemental complaint for tortious damages for wrongfully effecting a trustee's sale of a parcel of real property.[1]

The facts, essentially undisputed, are as follows: In 1959 defendant was the owner of a parcel of unimproved real property situated in Santa Clara County. Defendant exchanged such property with Mr. and Mrs. Atwill for a parcel in Los Angeles. The Atwills then sold the Santa Clara property to Geld, Inc. Geld gave the Atwills and defendant notes and executed a deed of trust as security. Defendant's note was for $13,393.41, while the Atwills' was for $36,606.59. Thus, the total encumbrance against the property was $50,000. Valley Title Company (hereinafter "Valley"), a codefendant below, was named trustee.

Geld, Inc. then granted the subject property to one Reichert. Reichert, who intended to build an apartment complex on the parcel, executed a second deed of trust in favor of Home Foundation Savings and Loan (hereafter "Home") as security for a $283,000 building loan from the latter. Shortly thereafter, the Atwills and defendant agreed with Home to subordinate their deed of trust to that of Home. Accordingly, the Atwill-defendant deed of trust, although first in time, became second in priority.

Plaintiff then entered the picture by lending Reichert some $15,000 for construction of the apartment building. This loan was represented by a promissory note in the face value of $18,000 and was secured by a third deed of trust on the subject parcel. Shortly thereafter, plaintiff advanced an additional sum of $10,000 to Reichert to be used to defray costs in the construction of said apartment building. In exchange for this loan plaintiff received a grant deed to the property from Reichert, but gave Reichert an option to repurchase the property for the sum of $25,000.

Subsequently, the payments on the Atwill-defendant note became in default. Accordingly, defendant caused to be published a notice of default and intent to sell. Apprised of such default notice, plaintiff duly and timely tendered to Valley the sum of $4,000 representing the sum needed

---

[1]Defendant also appealed from that portion of the judgment in the sum of $4,500 entered in favor of defendant and cross-complainant Valley Title Company, a corporation. We have been advised that the matter has been settled with respect to Valley and that it is no longer a party to the proceedings. Defendant has not argued or presented any points with respect to any issues having to do with Valley. Accordingly, under the circumstances, although no formal dismissal as to Valley has been filed, we deem the appeal as to Valley abandoned. (See *White* v. *Shultis,* 177 Cal.App.2d 641, 648 [2 Cal.Rptr. 414].)

to cure the default. Contrary to its advice to defendant and based upon his insistence, Valley refused plaintiff's tender. Defendant advised Valley that the note to Home,[2] which was secured by the first deed of trust, was also in default and therefore plaintiff's tender was an insufficient cure of the default. Accordingly, the trustee's sale was had on May 22, 1963, and defendant, along with the Atwills, purchased the property at such sale for $57,920.94. Defendant held the property for several years and in 1965 "exchanged" the property for a price of $475,000.

On appeal defendant makes two contentions: (1) That the trial court used the wrong standard for measuring damages; and (2) that in any event there was no evidentiary support for the court's finding as to damages. We observe here that no contention is made that damages may not be assessed where a trustee illegally, fraudulently or oppressively sells property under a power of sale contained in a deed of trust. We note that in California the traditional method by which such a sale is attacked is by a suit in equity to set aside the sale. (See *Taliaferro* v. *Crola,* 152 Cal.App.2d 448, 449-450 [313 P.2d 136]; *Crummer* v. *Whitehead,* 230 Cal.App.2d 264, 266, 268 [40 Cal.Rptr. 826]; *Central Nat. Bank* v. *Bell,* 5 Cal.2d 324, 328 [54 P.2d 1107].)

The only California case which has come to our attention involving an analogous situation is *Murphy* v. *Wilson,* 153 Cal.App.2d 132 [314 P.2d 507]. In that case the plaintiff and the defendant entered into an agreement whereby the defendant loaned $50,000 to the plaintiff who, pursuant to the agreement, placed a bill of sale to and chattel mortgage on certain personalty and a deed to his home in escrow and agreed that if he did not pay the sum of $75,000 to the defendant before a certain date the conveyances would go to the defendant. The defendant subsequently took possession of the property and sold it. The plaintiff then brought a declaratory relief action to have the conveyances adjudged to be mortgages. The trial court found that the agreement was in fact a mortgage loan and that since the defendant had not foreclosed the chattel mortgage and had sold the home outright he was liable to the plaintiff for damages. (At p. 134.) The reviewing court, although it disagreed with the computation of the damages, upheld the trial court's determination that the plaintiff was entitled to damages. The appellate court held that the defendant had converted the property to his own use and that he was required to pay to the plaintiff the fair market value of the property converted as of the date he took it into his possession together with interest on the value of the property converted. (At pp. 135-136.)

---

[2]Home, in the meantime, had made an additional advance under the terms of the first deed of trust in the sum of $69,562.74, making the total sum loaned by Home $352,562.74.

In analyzing the holding in *Murphy* we observe that it makes no distinction between the real and personal property and holds that both had been converted. We note here that it is generally acknowledged that conversion is a tort that may be committed only with relation to personal property and not real property. (See *Graner* v. *Hogsett,* 84 Cal.App.2d 657, 662 [191 P.2d 497]; *Reynolds* v. *Lerman,* 138 Cal.App.2d 586, 591 [292 P.2d 559]; *Vuich* v. *Smith,* 140 Cal.App. 453, 455 [35 P.2d 365]; 48 Cal.Jur.2d, Trover and Conversion, § 8; but see *Katz* v. *Enos,* 68 Cal.App.2d 266, 269 [156 P.2d 461] where an action was brought for what was there stated as an action "to recover damages for the alleged wrongful conversion by her of 42 acres of land" and damages were assessed.)[3]

Since conversion is a tort which applies to personal property, we disagree with the *Murphy* case to the extent that it purports to indicate that there may be a conversion of real property.[4] We are inclined, however, to believe that with respect to real property the *Murphy* case was articulating a rule that has been applied in other jurisdictions. ■ That rule is that a trustee or mortgagee may be liable to the trustor or mortgagor for damages sustained where there has been an illegal, fraudulent or wilfully oppressive sale of property under a power of sale contained in a mortgage or deed of trust. (See *Davenport* v. *Vaughn,* 193 N.C. 646 [137 S.E. 714, 716]; *Sandler* v. *Green,* 287 Mass. 404 [192 N.E. 39, 40]; *Edwards* v. *Smith* (Mo.) 322 S.W.2d 770, 776; *Dugan* v. *Manchester Federal Sav. & Loan Assn.,* 92 N.H. 44 [23 A.2d 873, 876]; *Harper* v. *Interstate Brewery Co.,* 168 Ore. 26 [120 P.2d 757, 764]; *Black* v. *Burd* (Tex. Civ. App.) 255 S.W.2d 553, 556; *Holman* v. *Ryon* (D.C. App.) 56 F.2d 307, 310-311; *Royall* v. *Yudelevit,* 268 F.2d 577, 580 [106 App. D.C. 1].)[5] This rule of liability is also applicable in California, we believe, upon the basic principle of tort liability declared in the Civil Code that every person is bound by law not to injure the person or property of another or infringe on any of his rights. (Civ. Code, § 1708; see *Dillon* v. *Legg,* 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316].)

Accordingly, since the subject tort liability inures to the benefit of a

---

[3]*Katz* does not discuss whether the tort of conversion may be committed with relation to real property but apparently assumed that it was the subject of conversion since the issue was not tendered.

[4]No petition for a hearing in the Supreme Court was made in the *Murphy* case.

[5]We note that in 59 C.J.S., Mortgages, section 603, subdivision a, footnote 91 (1970 Cum. Annual Pocket Part) the *Murphy* case is cited as authority for this principle which is there stated thusly: "Where a sale by a mortgagee or by a trustee in a deed of trust is illegal, fraudulent, or willfully oppressive, the mortgagor may maintain an action for damages against the mortgagee or trustee, . . ." (At p. 1068.)

mortgagor or trustor, it also inures to the benefit of the successor in interest to the trust property. ■ Pursuant to Civil Code section 2924c, such successor has the statutory right to cure a default of the obligation secured by a deed of trust or mortgage within the time therein prescribed. Plaintiff, therefore, as Reichert's successor in interest in the trust property was entitled to tender the amount due to cure any default in the obligation to defendant and to institute the instant action for damages for the illegal sale which resulted from the failure to accept the timely tender.

Before proceeding to discuss the proper measure of damages we observe that in the instant case plaintiff has brought the instant action against both the trustee and the beneficiary of the deed of trust. ■ Since the trustee acts as an agent for the beneficiary, there can be no question that liability for damages may be imposed against the beneficiary where, as here, the trustee in exercising the power of sale is acting as the agent of the beneficiary. (See *Davenport* v. *Vaughn, supra,* 137 S.E. 714, 716; *Edwards* v. *Smith, supra,* 322 S.W.2d 770, 777.) In the instant case the trial court made unchallenged findings that the trustee Valley was acting as the agent for and pursuant to the instructions and directions of defendant and the Atwills, the beneficiaries of the subject deed of trust.

Adverting to the measure of damages we observe that defendant asserts that the proper measure in the instant case is that which applies to damages occasioned by the wrongful loss of security.[6] In this context defendant argues that plaintiff has only suffered a loss of security for the promissory notes executed and delivered by Reichert to plaintiff. In essence defendant is contending that the deed absolute in form from Reichert to plaintiff was in fact a mortgage because it was intended as security for a debt. (See Civ. Code, § 2924.) In considering this contention we note initially that the trial court found that plaintiff purchased the subject property from Reichert and that such purchase was evidenced by a grant deed given for a valuable consideration.

The record is silent as to whether the issue was tendered below that defendant had no standing to make the claim that the subject deed was in fact a mortgage. ■ As we apprehend the rule declaring that a deed absolute may be shown to have been intended as a mortgage, it applies only to the parties to the transaction and those claiming under them. (See *Jackson* v. *Lodge,* 36 Cal. 28, 40 [overruled on another ground by *Hughes* v. *Davis,* 40 Cal. 117]; *Ahern* v. *McCarthy,* 107 Cal. 382, 383-

---

[6]We observe in passing that as defendant properly asserts, the proper standard for wrongful deprivation of security is the fair market value at the time of sale less outstanding encumbrances and/or taxes due at such time, not in any event to exceed the amount due plaintiff on his loans. (See *Howe* v. *City Title Ins. Co.,* 255 Cal.App. 2d 85, 87 [63 Cal.Rptr. 119]; *Stephans* v. *Herman,* 225 Cal.App.2d 671, 673-674 [37 Cal.Rptr. 746].)

384 [40 P. 482]; *Taylor* v. *McClain,* 60 Cal. 651, 652; *Bell* v. *Pleasant,* 145 Cal. 410, 417-418 [78 P. 957]; 33 Cal.Jur.2d, Mortgages and Trust Deeds, §§ 54, 56 and 57.) Accordingly, Reichert and those claiming under him were entitled to assert that the deed was in fact a mortgage and that plaintiff acquired merely a lien. They could not, however, make this assertion against an innocent purchaser or encumbrancer from plaintiff since such purchaser or encumbrancer was entitled, on the theory of estoppel, to claim that he was the real owner of the property. (See Civ. Code, § 2925; *Carpenter* v. *Lewis,* 119 Cal. 18, 21 [50 P. 925]; *Bell* v. *Pleasant, supra; Jackson* v. *Lodge, supra.*) ▉ Here defendant was not claiming under any of the parties to the subject transaction, but he was a stranger to it. Moreover, since defendant's encumbrance was prior in time and superior to Reichert's interest, defendant's interest was unaffected by the transaction between Reichert and plaintiff.

Assuming *arguendo* that defendant has standing to challenge the nature of the deed from Reichert to plaintiff, our inquiry would be directed, in view of the court's finding, to whether the subject instrument was in fact a deed and to whether this finding is supported by substantial evidence. We shall proceed to do so mindful that in making this determination our power begins and ends in ascertaining whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding. (*Green Trees Enterprises, Inc.* v. *Palm Springs Alpine Estates, Inc.,* 66 Cal.2d 782, 784 [59 Cal.Rptr. 141, 427 P.2d 805]; *Brewer* v. *Simpson,* 53 Cal.2d 567, 583 [2 Cal.Rptr. 609, 349 P.2d 289].)

▉ We first observe that Civil Code section 1105 provides that "A fee simple title is presumed to be intended to pass by a grant of real property, unless it appears from the grant that a lesser estate was intended." This statute establishes a rebutable presumption. (Evid. Code, § 602.) Such presumption is one affecting the burden of proof since it is a presumption which, in addition to the policy of facilitating the trial of actions, is established to implement the public policy favoring the stability of titles to property. (See Evid. Code, § 604, and Law Revision Com. comment thereto.) ▉ Accordingly, the effect of this presumption was to impose upon defendant the burden of proving the nonexistence of the presumed fact, i.e., that the grant deed conveyed a fee simple title to plaintiff. (See Evid. Code, § 606.)[7] This burden required that de-

---

[7]A deed absolute on its face may be shown to be a mortgage by parol evidence of such contradictory intent. (*Workmon Constr. Co.* v. *Weirick,* 223 Cal.App.2d 487, 490 [36 Cal.Rptr. 17]; *Greene* v. *Colburn,* 160 Cal.App.2d 355, 358 [325 P.2d 148]; *Borton* v. *Joslin,* 88 Cal.App. 515, 520 [263 P. 1033]; see Civ. Code, §§ 1105, 2925.)

fendant produce clear and convincing proof. (*Beeler* v. *American Trust Co.*, 24 Cal.2d 1, 7 [147 P.2d 583]; *Spataro* v. *Domenico*, 96 Cal.App.2d 411, 413 [216 P.2d 32]; *Cavanaugh* v. *High*, 182 Cal.App.2d 714, 718 [6 Cal.Rptr. 525]; *Borton* v. *Joslin, supra,* 88 Cal.App. 515, 520 [263 P. 1033]; see Legislative Committee comment to Evid. Code, § 606.)

■ The question whether the evidence offered to change the ostensible character of the instrument carries that much weight is for the trial judge and not the court of review. (*Beeler* v. *American Trust Co., supra; Cavanaugh* v. *High, supra; Spataro* v. *Domenico, supra.*) "On appeal the question is governed by the substantial evidence rule like any other issue of fact." (*Cavanaugh* v. *High, supra,* at p. 718; *Beeler* v. *American Trust Co., supra; Borton* v. *Joslin, supra.*)

■ In the present case there is conflicting evidence on the cardinal issue of the intent of the parties in deeding the property. Although there was testimony that plaintiff took the grant deed as better security for his loan, plaintiff testified that when he made the second loan to Reichert, plaintiff, at Reichert's instructions, paid the proceeds of the loan directly to the contractor who was constructing the apartment building; that Reichert gave plaintiff a grant deed which he recorded; and that Reichert's indebtedness to plaintiff was cancelled. Under familiar appellate principles we must, where there is conflicting evidence, accept as established that evidence which is favorable to plaintiff. That evidence is sufficient to sustain the trial court's finding upon the conclusion that defendant has failed to overcome by clear and convincing evidence the presumption which arises from the face of the deed. We note here that an important consideration is whether plaintiff's notes evidencing the indebtedness from Reichert survived the conveyance. (See *Borton* v. *Joslin, supra,* 88 Cal. App. 515, 518; *Cavanaugh* v. *High, supra,* 182 Cal.App.2d 714, 718; *Spataro* v. *Domenico, supra,* 96 Cal.App.2d 411, 416.) Here, there was evidence adduced by plaintiff's testimony that there was no survival of the indebtedness upon the execution and delivery of the grant deed. This circumstance is strongly indicative of a grant rather than a mortgage. (*Beeler* v. *American Trust Co., supra,* 24 Cal.2d 1, 17-18; *Cavanaugh* v. *High, supra,* 182 Cal.App.2d 714, 718; *Workmon Constr. Co.* v. *Weirick, supra,* 223 Cal.App.2d 487, 492.)

Having determined that plaintiff was not a security holder but the owner of the subject property, we proceed to inquire as to the proper standard for measuring plaintiff's loss. In making this inquiry we first note that the trial court found that defendant, in instructing Valley to foreclose upon the subject real property, did so intentionally, wrongfully and pursuant to an intentional design with regard to plaintiff and that because of such conduct plaintiff lost all of his right, title and interest in

said property, damaging plaintiff in the sum of $30,000. The trial court also found that the fair market value of the subject property on the date of the foreclosure was $30,000 more than the composite liens and encumbrances against it on that date.

Civil Code section 3333 provides that the measure of damages for a wrong other than breach of contract will be an amount sufficient to compensate the plaintiff for all detriment, foreseeable or otherwise, proximately occasioned by the defendant's wrong. ▮ In applying this measure it must be noted that the primary object of an award of damages in a civil action, and the fundamental theory or principle on which it is based is just compensation or indemnity for the loss or injury sustained by the plaintiff and no more. (*Estate of De Laveaga,* 50 Cal.2d 480, 488 [326 P.2d 129].) Accordingly, where a mortgagee or trustee makes an unauthorized sale under a power of sale he and his principal are liable to the mortgagor for the value of the property at the time of the sale in excess of the mortgages and liens against said property.[8] (*Murphy* v. *Wilson, supra,* 153 Cal.App.2d 132, 135-136; *Edwards* v. *Smith, supra,* 322 S.W.2d 770, 777; *Silver* v. *First Nat. Bank,* 108 N.H. 390 [236 A.2d 493, 495]; *Black* v. *Burd, supra,* 255 S.W.2d 553, 556-557.) In *Murphy* this rule was applied when the court awarded the plaintiff his equity in the home sold by the defendant.

▮ We turn now to the question whether there was substantial evidence to support the trial court's finding of damages. Defendant points out that the composite of the two prior encumbrances amounted to $411,562.74, that is, $352,562.74 plus $9,000 interest on the Home obligation and $50,000 on the defendant-Atwill obligation. This computation is conceded to be correct. It is defendant's contention, therefore, that such aggregate sum exceeds the sum of $408,000 which plaintiff's expert appraiser testified was the fair market value of the property. Accordingly, he argues that since this valuation was the highest appraisal and the fair market value of the property was less than the sum of encumbrances, there was no evidence to support the trial court's finding that the fair market value at the time of the sale exceeded by $30,000 the sum of the outstanding encumbrances. This contention is without merit since it assumes that the trial court was bound to accept the valuation placed upon the property by plaintiff's appraiser. We observe that although there was testimony by defendant's

---

[8]We observe here that this is the same measure of damages for loss of security urged by defendant, except that in such case the damages may not exceed the amount due on the note for which the real property was security. (*Stephans* v. *Herman, supra,* 225 Cal.App.2d 671, 673-674; *Howe* v. *City Title Ins. Co., supra,* 255 Cal.App.2d 85, 87.) It would appear that even under this theory plaintiff could recover damages up to $28,000, the amount of plaintiff's notes, if that sum exceeded the fair market value of the real property security, less prior liens and taxes.

appraiser that on the date of the foreclosure sale the fair market value of the property was $360,000 and that defendant himself testified that on said date said value was $400,000, there was also evidence from which the trial court could infer that on the subject date the fair market value of the property was approximately $450,000.

When defendant testified that the fair market value was $400,000 on the date of the foreclosure, he was cross-examined as to whether this was not in fact his valuation on the date of the recordation of the notice of completion of the apartment building, since in his deposition defendant had so testified. Defendant responded that the value on the date the notice of completion was recorded was approximately $350,000 and explained that in his deposition he understood the reference to the notice of completion to mean the completion of the building so that it was ready for occupancy. The trial court was not required to accept this explanation but was justified in believing that from the time the notice of completion was recorded and the foreclosure sale the value of the building had enhanced approximately $50,000. Moreover, the trial court was justified in believing, in the light of defendant's experience,[9] that when he testified that the value of the property was $400,000 at the time the notice of completion was filed he understood the meaning of "notice of completion." Under the state of the record the trial court would have been justified in concluding that plaintiff's equity was the difference between $450,000 and $411,562.74 or $38,437.26, and a finding to that effect would have been supportable. The trial court, however, found this equity to be the sum of $30,000 apparently on the basis that defendant's valuations were approximations.[10] Under the circumstances defendant cannot complain.

The judgment is affirmed.

Sims, J., and Elkington, J., concurred.

[9]The record discloses that defendant had a law school degree.

[10]In testifying to the $400,000 and $350,000 valuations, defendant stated "These are both rough guesses." Although defendant used the term "guesses" it is obvious from his testimony generally that he equated the term "guess" to an opinion.